**FIDELITY BANKERS LIFE INSUR-
ANCE COMPANY, Appellant,**

v.

**Gray WILLIAMS, Trustee in Bankruptcy
for O'Neill Enterprises, Inc.,
Appellee.**

**In the Matter of O'NEILL ENTER-
PRISES, INC., Bankrupt.**

**No. 74-1269.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 2, 1974.

Decided Nov. 6, 1974.

Edward S. Hirschler, and Miles Cary, Jr., Richmond, Va. (Hirschler & Fleischer, Richmond, Va., on brief) for appellant.

T. Munford Boyd, Charlottesville, Va. (Paxson, Smith, Boyd, Gilliam & Gouldman, Inc., Charlottesville, Va., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and RUSSELL, and FIELD, Circuit Juges.

HAYNSWORTH, Chief Judge:

In 1966 O'Neill Enterprises mortgaged a building in Virginia to Fidelity Bankers Life Insurance Company, agreeing that on default the mortgagee had the right to take possession and collect all rents. That mortgage provision gave Fidelity a security interest in the rents, and O'Neill also signed a supplemental agreement that directly assigned all rents to Fidelity on a default. On January 7, 1972, O'Neill was adjudicated bankrupt, and, later, a trustee took control of its holdings. Without delay, Fidelity petitioned the bankruptcy court to abandon the property, claiming that its mortgage plus three other subordinate mortgages exceeded the building's value. Although Fidelity filed the petition on February 7, the bankruptcy court did not act on it until September 14. During this seven-month period, Fidelity did not petition the court to sequester the rents from the building, but it frequently inquired about the status of its abandonment petition. Shortly after the court finally ordered abandonment, the trustee under Fidelity's deed of trust sold the property in a foreclosure sale. The trustee complied with the state laws concerning publication of the sale, and the purchaser was completely unrelated

to Fidelity. The sale, however, produced only slightly more money than Fidelity's unpaid principal balance, even though several appraisers had valued the building at much higher prices.

Fidelity petitioned the bankruptcy court for an accounting and payment of the net rentals accrued between the adjudication of bankruptcy and the foreclosure sale. During that period, the trustee had paid the building's operating expenses, but had accrued a net surplus of $20,482 from the rental income. Fidelity claimed that the proceeds of the foreclosure sale did not cover a $19,956 loss, which consisted of unpaid interest during the bankruptcy administration and the expenses of the sale. The bankruptcy judge, however, denied Fidelity's claim, and the district court affirmed that decision.

Other courts of appeals have disagreed about whether a lien creditor is entitled to the income from property during bankruptcy administration. 4A Collier, Bankruptcy § 70.16, at 167–68 (14th ed. 1971). Some courts, notably the Third and Seventh Circuits, hold that a secured creditor may recover the rental income. *See, e.g.,* In re Pittsburgh-Duquesne Development Co., 482 F.2d 243, 246 (3d Cir. 1973); Central Hanover Bank & Trust Co. v. Philadelphia & Reading Coal & Iron Co., 99 F.2d 642 (3d Cir. 1938); In re Wakey, 50 F. 2d 869 (7th Cir. 1921). Those courts view the issue as a contest between the secured creditors and the unsecured ones for whom the bankruptcy court operates the estate. Since the rental income is additional security for the mortgage loan, the Third and Seventh Circuits equitably shift the income from the unsecured to the secured creditors.

Other courts of appeals, including the Eighth and Ninth Circuits, reject this approach. *E.g.,* Tower Grove Bank & Trust Co. v. Weinstein, 119 F.2d 120 (8th Cir. 1941); In re Hotel Saint James Co., 65 F.2d 82 (9th Cir. 1933); *see* In re Humeston, 83 F.2d 187 (2d Cir. 1936). Those authorities have found that the mortgagee has no right to the rents because, under the mortgage terms, state courts require the mortgagee to take possession in order to fix his right to the rents. A mortgagee, however, cannot take possession and collect rents once the bankruptcy court has assumed control of the property. Accordingly, those courts substitute other actions to secure rights in the rental income for the contractual entry of possession and collection of rents. If the mortgagee has petitioned the bankruptcy court for a sequestration order, obtained the appointment of a receiver to collect the rents, or secured the court's consent to foreclose, the Eighth and Ninth Circuits allow him to recover the rental income during the bankruptcy administration. *See, e.g.,* Pollack v. Sampsell, 174 F.2d 415 (9th Cir. 1949); Mortgage Loan Co. v. Livingston, 45 F.2d 28 (8th Cir. 1930); 4A Collier, *supra* § 70.16, at 161–63.

Although Fidelity pursued its abandonment petition, it did not take the steps required by the Eighth and Ninth Circuits to fix its right to the rental income. Its failure to take action, however, has not caused difficulty in ascertaining the amount of the net rental income from operating the property. Nonetheless, the supplemental agreement between Fidelity and O'Neill removes this case from the primary area of dispute between the other courts of appeals. That agreement assigned the income to Fidelity without requiring it to take possession of the building. The Ninth Circuit has recently considered a mortgage clause similar to the supplemental agreement. In re Ventura-Louise Properties, 490 F.2d 1141 (9th Cir. 1974). Since the California courts had held the clause valid, the Ninth Circuit did not rely on its earlier decisions. Instead, it decided that a mortgagee need not request sequestration or take other steps to protect its rights if the mortgage contains an assignment of rents upon default, instead of a conditional security interest in the rents. Although the courts of Virginia have not

**1244**

expressly approved the provisions of the supplemental agreement, we perceive no reason why they would not enforce them. Accordingly, since Fidelity had a right to the rents upon O'Neill's default, we hold that it is entitled to recover them from the bankruptcy estate.

Reversed.