Moncure, J.
delivered the opinion of the Court.
The suit in which the decree from which the appeal in this case was taken, was rendered, was a suit brought to recover of dormant partners a debt for which the ostensible partners had given their bonds, but which the latter had become unable to pay by reason of their insolvency. The following appear to be the facts of the case so far as it is material to state them. In 1841 Per-due, Nichols, Brooke and Jewell entered into partnership for carrying on the iron making business in the county of Jefferson; and accordingly carried it on for about two years. Perdue and Nichols resided in the county of Jefferson, and were the ostensible partners ,• Brooke and Jewell were non-residents of the state, and their names did not appear in the style of the firm, which was “ Perdue, Nichols & Company.” It does not appear to ' have been known to the appellee, nor generally, that Brooke and Jewell were partners; and it was proved that several suits were brought by different attorneys against Perdue and Nichols alone as constituting the firm of “ Perdue, Nichols & Company,” though it does not appear that there was any designed concealment of the fact that Brooke and Jewell were members of the firm. In May 1841 the appellee Washington sold and conveyed to Perdue and Nichols 843 acres of land in Jefferson for 6200 dollars; of *251 which 1100 dollars was paid at the time; and for the balance they gave their bonds payable in five annual instalments, and gave a deed of trust on the land to set n > m. t cure the payment of the same. The cash payment was made by the check of “ Perdue, Nichols & Co.,” and entries were made on their books, bearing the same date with the deeds and bonds, to wit, the 1st of May 1841, crediting Washington in account with the firm, for 6200 dollars, the purchase money of the land, and debiting him in the same account with 1100 dollars the cash payment. During the operations of the partnership for some eighteen months after the purchase, about five thousand cords of wood were cut from the land and used in the said operations. Portions of the land were also rented out and the rents were received by the firm and entered on their books. Brooke had access to the books and looked into them, though it did not appear that he ever examined any account but his own. In December 1842, Perdue and Nichols in their individual names and by the partnership name of Perdue, Nichols & Co., executed a deed of trust to secure the debts of the firm which are enumerated. Three parcels of land besides other property were embraced in the deed, but the land bought of Washington was not included, and the debt due to him was not mentioned in the deed. In March 1843 Washington filed his bill charging that a large portion of the value of the land consisted in the timber and trees standing on it, that the object of the purchasers in buying it was to cut off the timber for fuel to supply their iron works; that they had cut down and carried off the timber and trees on the land until it was of very little value ; that he had no other security for the purchase money than the land itself under the deed of trust; that the partnership had become insolvent and made a general assignment of their effects for the benefit of their creditors; and his only mode of redress to recover the balance due him *252 was to charge the same on the individual partners; and that Brooke was a partner at the time of the sale, though he was then ignorant of the fact; the name of Brooke being withheld from the public: and seeking to charge said Brooke as a member of the firm for the balance of said debt. Afterwards an amended bill was filed charging that Jewell also was a secret partner of the firm; and seeking to make him liable. Of all the defendants Brooke alone filed an answer. He placed his defence upon the ground that the purchase was not made on account or upon the credit of the firm, or by his authority, and was not within the scope of the partnership ; and in the absence of any knowledge on the subject at the time it was made, “presumes it was made by Perdue and Nichols with the view of bringing it into the firm as a part of their share of the capital and he also objected to the jurisdiction of the Court.
The Cirouit court being of opinion that Brooke and Jewell were secret members of the firm; that that fact was unknown to the appellee at the time of the sale; that the land was purchased for partnership purposes ; that the chief value thereof consisted in its timber required as fuel for the iron works; and therefore that such purchase was a transaction in the ordinary course of business in conducting the iron works, rendered a decree against all the parties for the balance due to Washington after crediting the proceeds of the sale of the land. From that decree the appeal in this case was taken.
The case of Weaver v. Tapscott, 9 Leigh 424, seems to rule this case, and to shew that there is no error in the decree of the Circuit court. In that case Weaver and Trimble were partners in the boating business upon James river, between Rockbridge and Richmond. Trimble went to Buckingham and hired hands to be employed in the business, which were actually so employed during a portion of the time that *253 the partnership continued; and for the hire he executed his bond with Tapscott as surety. Trimble the principal obligor having become embarrassed, and left the state, Tapscott the surety was compelled to pay the money, and filed his bill to recover it of the other partner, Weaver, who had not signed the bonds. He obtained a decree; and this Court consisting of five Judges unanimously affirmed it. Many expressions used by the Judges in that case are very apposite to this. Parker, Judge, says, “A dormant partner to whom a vendor gives no credit, and whose responsibility constituted no part of the consideration moving him to sell, is liable to the whole extent of engagement in matters which, according to the usual course of dealing, have reference to the business transacted by the firm. Robinson v. Wilkinson, 3 Price’s Exch. R. 538 ; Saville v. Robertson, 4 T. R. 720. There can be no doubt that the hiring of hands to be employed in the boating business had immediate reference to the nature of the dealings between Trimble and Weaver. The trade in which they were engaged could not be carried on without hands any more than without boats.” “ If Tapscott was ignorant of Weaver’s being a partner, it brings this case within the influence of those upon secret partnership. Gow. 176. If he knew it, but dealt with Trimble alone, without intending to release the partnership, it must be governed by the cases of Bond v. Gibson, 1 Camp. R. 185, and Gouthwaite v. Duckworth, 12 East’s R. 421. It is only, I think, in cases where a separate credit is clearly given to one of the partners, to the exclusion of the rest, that the latter are absolved.” “ When one deals with a partner in matters relating to the partnership business, it ought to be inferred that he deals on the credit of the partnership, unless the circumstances prove that though apprised of the partnership he meant to give individual credit. It would be hard to hold him bound to prove that he knew *254 of the partnership and dealt on its credit.” “ The presumption is in the affirmative; and to discharge the firm it ought to appear clearly that he gave credit to the individual alone and intended to absolve the other partners.” Cabell, Judge, says, “It is perfectly clear that Weaver was equally liable with Trimble even if Tapscott at the time of the contract was ignorant of the fact that Weaver was a partner. And if the fact of the partnership was known to Tapscott, Weaver is a fortiori liable ; unless indeed it can be shewn that Tapscott, with this knowledge contracted on the individual credit of Trimble, in exclusion of that of Weaver. Nothing of the kind is attempted to be proved, and it cannot be presumed without proof. Weaver therefore was clearly liable on the hiring; and the cases of Sale v. Dishman, 3 Leigh 548; and McCullough v. Somerville, 8 Leigh 415, shew that this obligation was not extinguished by the execution of a bond by his partner.” Tucker, P. referring to the arrangement alleged, that Weaver should find the hands and Trimble the boats, says that even if it was made between the parties, yet the public had nothing to do with that arrangement, and as Weaver was to get half the profits he was responsible for the hires, since that interest in the profits ipso facto constituted him a partner.” Again he says, “It is possible, says Chief Baron Macdonald, in Barton v. Hauson, 2 Camp. R. 97, that separate credit may be given to one of two partners individually, but the presumption of law is otherwise, and that presumption must be rebutted by very clear evidence. And this is reasonable; for why should the partner desire to bind himself and absolve the concern ? or why should the dealer with him prefer to bind him individually, when, if bound as a partner, he is personally not less bound, and there is the additional security of his partner.” In this case it is absurd to suppose that Tapscott took Trimble’s individual responsibility, if he knew of Wea *255 ver’s connexion with him; and if he did not know of it, then the execution of a sealed instrument could not have been with a view to indicate his individual responsibility in contradistinction to that of the concern.”
These copious extracts are made from the opinions of the Judges in Weaver v. Tapscott, because, nomine mutatei, they are as applicable to this case as they were to that, and because they leave little or nothing more to be said in this case. It seems to be difficult to find a distinction between that case and this, unless it be in the fact that in that case the bonds were given for negro hire, and in this they were given for the purchase money of land; and that is a distinction without a difference, at least in principle. Land is not ordinarily a subject of partnership operation, and therefore stronger evidence is required to shew an intent to convert real estate into partnership stock. But it is capable of being so converted; and an intention to make such conversion being shewn by sufficient evidence, it becomes as completely a part of the social effects as if it were personal estate. In the case of Wheatley v. Calhoun, 12 Leigh 264, this Court said, that “ whatever doubts may have heretofore existed as to the light in which real property is to be considered, when bought and used by a commercial partnership for the purposes of the concern, it is now well settled that it is to be looked upon as forming a part of the partnership funds. Such is at present the received doctrine in England, and so this Court has decided.” In that case Wheatley and Calhoun had purchased a mill and tract of land jointly, and for sometime conducted a partnership milling business. The question was whether there was sufficient evidence of an intention to convert the mill and land into partnership stock, or, whether they merely intended to carry on the milling business in partnership. Tucker, P. in delivering the opinion of the Court said “ There may indeed be partnerships in the businees of milling or mi *256 ning or farming; but unless the intent of the joint owners to throw their real estate into the fund as partnership stock is distinctly manifested, or unless the real property is bought out of the social funds, for partnerS^P PurPoses) it must still retain its character of realty.” “ In this case I see nothing from whence to infer that there was any design on the part of these joint purchasers to convert their real estate into partnership stock.” In the case now under consideration the evidence is conclusive that the land was bought for partnership purposes, paid for in part and intended by the purchasers to be paid for entirely, out of partnership funds, and applied to partnership purposes. The purchase was within the scope of the partnership, for the operations of the furnace could not be carried on without fuel; and the best mode of obtaining it was to purchase land in the neighbourhood, well covered with wood, as was the land of Washington. All the partners are therefore bound for the purchase money, on the authority of the cases before cited. The case of Pitts v. Waugh, 4 Mass. R. 424, was a very different case from this. It was a case of speculation in lands, and the question was, whether, not being a subject of trade and commerce, the mercantile law in regard to dormant partners was applicable thereto: and the Court thought not. That case was decided in 1808, since which time the partnership law in regard to real estatate has undergone great changes. Collyer on Partnership, § 135 and notes. But in this case the land was not purchased for speculation, but for the purpose of carrying on a business which was an ordinary and legitimate subject of commercial partnership. There is nothing in the objection of the statute of frauds. The purchase being within the scope of the partnership the partners Avho made it were agents for the partnership which became bound by a valid contract made by their agents. It would also be bound on the doctrine of part performance.
*257 The jurisdiction of a Court of equity in this case is fully sustained by the cases of Sale v. Dishman, 3 Leigh 548 ; Weaver v. Tapscott, 9 Leigh 424; Williams v. Donaghe's ex'or, 1 Rand. 300; Galt v. Calland, 7 Leigh 594; Parker v. Cousins, 2 Gratt. 372.
The Court is therefore of opinion to affirm the decree.
Decree affirmed.