May Term, 1857.

ROBERTS
v.
McCARTY.

---

### ROBERTS *v.* McCARTY and Others.

*A.* and *B.* owned a warehouse and lot, which they used in their partnership business. *A.* sold a half interest in the property to *C.*, who took a deed in his own name, and became the partner of *B.* *B.* and *C.* fitted up the warehouse for manufacturing flour; and afterwards, *B.*, with the consent of *C.*, sold his half interest to *D.*, who paid his individual funds, and took a deed in his own name. *C.* and *D.* shared the expense of completing the mill equally, and then carried on the business of manufacturing flour, in partnership. Partnership funds were used in paying for repairs, improvements, and protection. The partnership was dissolved, and a settlement showed *D.* indebted to *C.* 3,000 dollars. *D.* became insolvent, and made an assignment. His assignees sued for partition of the property, *C.*, in his answer, claimed that the property was part of the capital stock of the firm, and that he had a lien upon the undivided half for the balance of 3,000 dollars. *Held*, 1. That the property was chargeable in the same manner as if it had been paid for out of money belonging to the partnership. 2. That the character of partnership property was impressed upon it by the manner of its use for the purposes of the firm. 3. That it must be treated as personalty, and held subject to the lien.

Monday,
May 25,

APPEAL from the *Franklin* Circuit Court.

DAVISON, J.—This was a complaint by *McCarty*, *Tyner*, and *Holland*, against *Roberts*, for the partition of certain

real estate. There was an answer by the defendant, to which the plaintiffs replied.

The facts disclosed by the pleadings and evidence are substantially the following: *Stephen* and *Charles Coffin* were the owners, in fee, of the real estate of which partition is sought, the same being a lot of ground in the town of *Brookville*. They were partners in business, and used, for purposes connected with their partnership operations, a frame warehouse, which they had constructed on the lot. In *July*, 1846, *Charles Coffin* conveyed the undivided half of the real estate to *Roberts*, the defendant. After this, *Roberts* and *Stephen Coffin* became partners, and as such, put the proper machinery into said warehouse, with a view of converting it into a mill for the manufacture of flour. In *September*, 1846, *Stephen Coffin*, with the assent of his then co-partner, *Roberts*, sold and conveyed his undivided half to one *Richard Tyner*, who made the purchase with his own individual funds, intending, at the time he purchased, to run the mill in partnership with *Roberts*. When the mill was completed, *Tyner* had paid one-half the expense of its completion, and *Roberts* the other half. As partners, they, *Tyner* and *Roberts*, run the mill and carried on the business of manufacturing flour up until the 10th of *November*, 1854, when they dissolved the partnership. During its existence, some improvements were made on the real estate and mill; but the value of them is not shown. These improvements were paid for out of the partnership funds. Policies of insurance were taken out for the protection of the mill property. Four of them were in the names of *Richard Tyner* and *John Roberts*, and one in their partnership name of *Tyner* and *Roberts*. The premium on all the policies was paid by *Tyner*, and charged to the firm. After the dissolution took place, a settlement was had, whereby it appeared that *Tyner* owed *Roberts* 3,000 dollars—a balance due him on account of their partnership transactions. *Roberts*, on being informed that *Tyner* had become insolvent, and was about to make an assignment, requested him to secure the balance due; but he declined doing it. And on the 10th of *November*, 1854,

*Tyner* assigned all his property to the plaintiffs, in trust, for the use of his creditors. The defendant, in his answer, insisted that the real estate in question was a part of the capital stock of *Tyner* and *Roberts*, and that, for the 3,000 dollars, he was entitled to a lien on the undivided half sued for in this action. But the Circuit Court decided otherwise, and rendered a judgment in the plaintiffs' favor for partition, &c.

The only question before us is—Was the mill property partnership stock? If it was, *Roberts*, for the balance due on settlement with his co-partner, has a right to the lien set up in his answer. It is conceded that real estate, acquired with partnership funds, for the use and convenience of the firm, may, in equity, be chargeable with the debts of the co-partnership, and with any balance which may be due from one co-partner to another, upon the winding up of the affairs of the firm (1); but it is insisted that, in the present case, no such conclusion results; that each partner having paid for one half of the mill property, it remained in severalty, constituted no part of their capital stock, and is not subject to the alleged lien. It is true, the property, in this instance, was not acquired with partnership funds; still, it was purchased with a view to the formation of the co-partnership, and was brought into the firm and used for its purposes. It is fairly deducible, from the nature of the partnership, as well as the conduct of the partners, that they intended that the mill property should belong to the firm. Without it, the joint business in which they were engaged could not have progressed, and the partnership assets were used in defraying the expenses of its repair, improvement, and protection. There is, indeed, no valid reason why it should not be chargeable in the same manner as if it had been paid for out of moneys belonging to the partnership. Mr. STORY says, that real estate, belonging to the partnership, will be treated as personalty to all intents and purposes, if the partners themselves have, by their agreement or otherwise, impressed upon it the character of personalty. Story on Part. s. 93 (2). Here, the property was acquired by the partners for their joint use. For the purposes intended

it was taken into the firm and used in its operations, and in respect to it, they occupied the same relation as if it had been purchased with their joint moneys.

We are, therefore, of opinion that they did impress upon it the character of partnership property. It follows that *Roberts* is entitled to his lien. This conclusion is, in our opinion, supported by authority. See *Goodburn* v. *Stevens*, 1 Md. Ch. R. 420; *Buchan* v. *Sumner*, 2 Barb. Ch. 165; *Hale* v. *Plummer*, 6 Ind. R. 121; and *Buckley* v. *Buckley*, 11 Barb. S. C. 44. The judgment must be reversed.

*Per Curiam.*—The judgment is reversed with costs.

*J. Ryman*, for the appellant.

*J. D. Howland* and *G. Holland*, for the appellees.

---

(1) Mr. Chancellor WALWORTH, in *Buchan* v. *Sumner*, 2 Barb. Ch. 165, where the authorities are ably reviewed. See, also, Kent, Com. Lect. 43, pp. 37, 38, 39, 4th ed., and the authorities cited in the notes; Gow on Part. c. 2, pp. 32 to 35, 3d ed.; Watson on Part. c. 2, pp. 81 to 89, 2d ed.; Gow on Part. Supplement, 1841, to 3d ed. c. 2, s. 1, pp. 8 to 13; Collyer on Part. B. 2, c. 1, s 1, pp. 82 to 102; Mr. *Bell's* summary of the *Scottish* law, Story on Part. 3d ed., top p. 137, note.

. (2) This was the rule in equity. The part of the section referred to reads as follows: "Indeed, so far as the partners and their creditors are concerned, real estate belonging to the partnership, is in equity treated as mere personalty, and governed by the general doctrines of the latter. And so it will be deemed in equity, to all other intents and purposes, if the partners themselves have, by their agreement or otherwise, purposely impressed upon it the character of personalty." The cases cited are, *Thornton* v. *Dixon*, 3 Bro. Ch. 199, and Mr. *Belt's* note (1); *Balmain* v. *Shore*, 9 Ves. 501, 507, 508, 509; *Ripley* v. *Waterworth*, 7 Ves. 425; *Cookson* v. *Cookson*, 8 Sim. 529; *Fereday* v. *Wightwick*, 1 Russ. and M. 45; *Houghton* v. *Houghton*, 11 Sim. 49; *Buchan* v. *Sumner*, 2 Barb. Ch. 200. At law it was otherwise. See 1 Story's Eq. Jurisp. s. 674; Story on Part. s. 92; *Anderson* v. *Tompkins*, 1 Brock. 456, 465; *Blake* v. *Nutter*, 1 App. 16. Where real estate is bought and held for the purposes of the partnership, the conveyance may be in the name of one, for the benefit of all the partners; or in the name of all, as tenants in common, or joint tenants. And in a Court of equity, such real estate is treated, to all intents and purposes, as a part of the partnership funds, whatever may be the form of the conveyance. "For a Court of equity considers the real estate, to all intents and purposes, as personal estate; and subjects it to all the equitable rights and liens of partners," &c. 1 Story Eq. Jurisp. s. 674. · *Goodburn* v. *Stevens*, 5 Gill, 1; *Rice* v. *Barnard*, 20 Verm. R. 479; *Buchan* v. *Sumner*, 2 Barb. Ch. 165; *Washburn* v. *Bank of Bellows Falls*, 19 Verm. R. 278, 292; *Day* v. *Perkins*, 2 Sandf. Ch. 359; *Cox* v. *McBurney*, 2 Sandf. S. C. 561; and *Averill* v. *Loucks*, 6 Barb. S. C. 19, 470, are cited.