# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## E. L. KLINGSTEIN V. THE ROCKINGHAM NATIONAL BANK OF HARRISONBURG, ET ALS.

November 14, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Glenn W. Ruebush* and *John T. Harris,* for the appellant.

*Edward C. Martz, Ward Swank, Ethel Irwin Lineweaver*
and *Laird L. Conrad,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

In this suit in equity the question involved is whether
certain real estate, in which each of two partners owned
an undivided one-half interest, should be treated as
partnership property, or as owned by the parties as ten-
ants in common.

The facts are not disputed and are as follows: In
November, 1918, B. F. Dean and W. S. Clemmer formed a
partnership under the style of the "Dairy Lunch" for the
purpose of operating a restaurant on the north side of
Water street, in the city of Harrisonburg, Virginia. From
the date of the formation of the partnership until Dean's
death in 1932, each partner devoted his whole time to, and
had an equal share in the business.

In 1921 the owner of the property occupied by the
partners demanded a large increase in the rent. It hap-
pened that Dean owned an unimproved lot across the
street from the restaurant. Accordingly, the partners
agreed that Dean would sell to Clemmer an undivided
one-half interest in the lot, that they would erect thereon
a building suitable for the business and pay for such
structure out of the partnership profits. Pursuant to this
agreement, in March, 1922, Dean and his wife conveyed
to Clemmer an undivided one-half interest in the property
for the agreed consideration of $2,000, a part of which
was paid in cash and the balance by Clemmer's assuming
one-half of the deed of trust indebtedness on the lot.

Even before the deed had passed a substantial building,
suitable to the needs of the business, had been erected on
the land. The entire cost of this building, amounting to
between $7,000 and $8,000, as well as the subsequent taxes
and insurance, were paid for out of partnership funds.
Until Dean's death the partnership occupied and used the
premises. The rent from that portion of the building not

necessary for the restaurant went into the partnership receipts just as cash received from the business.

Clemmer testified that at the time he acquired the interest in the lot it was understood between Dean and himself that it should be partnership property, and that it was thereafter actually so regarded by them.

While Dean's death precluded his testifying on the subject, the evidence shows that in September, 1932, he signed a financial statement of the affairs of the partnership on the basis of which funds were loaned to the firm by the First National Bank of Harrisonburg. In this statement the real estate was listed as belonging to the firm. It also appears that Dean furnished to the same bank an individual financial statement detailing his individual real estate holdings, and did not include therein his interest in the Water street property.

Shortly after the death of Dean in December, 1932, W. S. Clemmer, the surviving partner, filed a bill in the Circuit Court of Rockingham county against Dean's administrator and others praying for a settlement of the partnership affairs, including a sale of the partnership assets, among which the Water street land and building were listed. The usual reference was executed, the creditors of the partnership were regularly convened, and the court decreed a sale of the real estate as a part of the partnership assets. E. L. Klingstein bid in the real estate, which was sold at public auction. On July 3, 1933, the sale was confirmed, the purchase money paid and the property conveyed to Klingstein by a special commissioner. Subsequently the funds arising from this sale were disbursed among the partnership creditors.

In July, 1933, The Rockingham National Bank of Harrisonburg, an individual creditor of B. F. Dean, deceased, filed its bill in the Circuit Court of Rockingham county to settle Dean's estate. The bill set out in detail certain real estate owned by Dean and asked that it be subjected to the payment of his debts. No mention was made of Dean's interest in the Water street property which had, in

the meantime, been conveyed to Klingstein, as aforesaid. On September 12, 1933, the bank filed its amended and supplemental bill to which Klingstein, Dean's widow, and Clemmer, the surviving partner, were made parties defendant. The amended and supplemental bill alleged that the Water street real estate was not partnership property but was owned by Dean and Clemmer as tenants in common. Accordingly, it prayed that the sale of the real estate in the former proceedings to Klingstein be set aside, and that Dean's interest therein be subjected to the payment of his individual debts. Klingstein, the widow and Clemmer each filed separate answers denying the claim that this real estate was owned by Dean and Clemmer as tenants in common, and asserting that it was partnership property, as had been determined in the prior suit.

As to the status of the property, the complainant offered in evidence the deeds showing that Dean and Clemmer each owned an undivided one-half interest therein, and rested. The respondents offered the testimony of Clemmer and others to prove the facts and circumstances above related.

Over the exceptions of Klingstein and certain partnership creditors, the lower court sustained the report of the commissioner in chancery, to whom the matter had been referred, and held and decreed that the Water street property did not belong to the partnership but was owned by Dean and Clemmer as tenants in common, and that Dean's interest therein was liable first for the payment of his individual debts. The conveyance to Klingstein was set aside and the property ordered to be again sold.

The present appeal brings under review the correctness of the several decrees carrying out the lower court's views.

■■ The principles of law applicable to this situation are well settled. When the title to real estate is held by partners individually the presumption is that the partners hold the property as tenants in common. 20 R. C. L., page 850, section 56, page 855, section 61; 37 L. R. A. (N. S.), page 894, note. Therefore, the introduction in

evidence by the complainant of the title deeds showing that Dean and Clemmer each owned an undivided one-half interest in the property, made out a *prima facie* case that it was held by the partners as tenants in common.

But this presumption may be rebutted in equity. And whether the land, in fact, belongs to the partnership or to the individuals composing it, depends upon the intention of the parties.

In 20 R. C. L., page 855, section 61, it is said: "If by all the circumstances attending the transaction, it is made to appear that, in the intention of the parties, it was purchased for and was treated as partnership property, the presumption of ownership arising from the face of the deed will be overcome, and the property will be treated as belonging to the partnership."

In *Johnson* v. *Hogan,* 158 Mich. 635, 123 N. W. 891, 897, 37 L. R. A. (N. S.) 889, 909, one of the leading cases on the subject, the court says: "Whether or not land taken in the name of one or more partners is in fact partnership property always depends upon the intent of the parties and the understanding and design under which they acted. It is clear that an express agreement may show this intent; but it may also be established by an implied agreement. This implied agreement may be gathered by considering the general purpose of the parties, the nature of their business, and the manner in which they have dealt with the property in question."

See 37 L. R. A. (N. S.), page 891, for a note collecting numerous cases on the subject.

In 20 R. C. L., page 831, section 36, it is said: "Partnership contracts, like other contracts, are governed by the intention of the parties. Every partnership rests on the mutual consent of the members. This intent may be manifested by the terms of their agreement, the conduct of the parties to each other under it, or by the circumstances generally surrounding the transaction." This principle applies with equal force to a contract for holding

partnership real estate as it does to an agreement for operating a partnership business.

In *Wheatley's Heirs* v. *Calhoun,* 12 Leigh (39 Va.) 264, 269, 37 Am. Dec. 654, and in *Brooke* v. *Washington,* 8 Gratt. (49 Va.) 248, 255, 56 Am. Dec. 142, this court had previously held that, in the final analysis, the intention of the parties was the controlling factor in determining whether real estate was partnership property.

In *Diggs' Adm'r* v. *Brown,* 78 Va. 292, 295, this court said: "And it matters not in whose name the property may stand, as the owner of the legal title; the property in whose name it stands being treated as a trustee of the partnership, and accountable accordingly." See also, *Hardy* v. *Norfolk Mfg. Co.,* 80 Va. 404, 417; *Savings & Loan Corporation* v. *Bear,* 155 Va. 312, 331, 154 S. E. 587, 75 A. L. R. 980.

■ It is likewise well settled that the agreement, showing the intent of the parties with reference to the partnership real estate, need not be in writing but may be oral or implied. 20 R. C. L., pp. 855, 856, section 62; 48 Am. St. Rep. 64, note; *Goldthwaite* v. *Janney,* 102 Ala. 431, 438, 15 So. 560, 562, 28 L. R. A. 161, 48 Am. St. Rep. 56, 58; *Johnson* v. *Hogan,* 158 Mich. 635, 123 N. W. 891, 897, 37 L. R. A. (N. S.) 889, 909.

■ Among the circumstances (in addition to an express agreement) which may show the intention of the parties, are: The acts and declarations of the partners (20 R. C. L., page 855, section 62); the acquisition of the property for partnership purposes (20 R. C. L., page 858, section 65); its use by the partnership (20 R. C. L., page 856, section 63); the payment for improvements thereon out of firm assets (20 R. C. L., page 861, section 69); and the payment of taxes and insurance thereon by the partnership (37 L. R. A. (N. S.), page 891, note).

■ We think the combination of facts and circumstances here, established by undisputed testimony, show that the parties intended that this real estate should be partnership property. We have, (1) the agreement of

the partners established by Clemmer's testimony and corroborated by Dean's statements to the bank; (2) the borrowing of money by the firm on the property as a partnership asset; (3) the payment out of partnership funds of the cost of improvements, which contributed more than sixty per cent of the total cost price of the property; (4) the acquisition and use of the property for partnership purposes; (5) the payment of taxes, insurance and repairs out of partnership funds; and (6) the collection by the partnership, as such, of the rents on that part of the building not used for the partnership business.

The partnership ownership of real estate was upheld in the following leading cases in which the facts were quite similar to those in the case at bar: In *Johnson* v. *Hogan,* 158 Mich, 635, 123 N. W. 891, 37 L. R. A. (N. S.) 889, where real estate standing in the name of one partner was shown by the acts of the partners to have been intended for partnership purposes; in *Roberts* v. *McCarty,* 9 Ind. 16, 68 Am. Dec. 604, where a mill and lot were purchased with the individual funds of two persons, but with a view to forming a partnership which improved and used the property; in *Taber-Prang Art Co.* v. *Durant,* 189 Mass. 173, 75 N. E. 221, where a brick storehouse was paid for by the partnership and built on land owned by the individual partners.

The decrees appealed from being erroneous, should be reversed and set aside and the bill of The Rockingham National Bank of Harrisonburg dismissed. A decree to that effect will be entered here.

*Reversed.*