Don BOYD, et als., Appellees,

v.

MARTIN EXPLORATION COMPANY, et als., Defendants,

Committee of Unsecured Creditors, Appellant.

Bankruptcy Adv. No. 83–0068.
Civ. A. No. 85–1425.

United States District Court, E.D. Louisiana.

Jan. 6, 1986.

Blake G. Arata, F. Neelis Roberts, and Lisa R. Shelton of Gordon, Arata, McCollam, Stuart & Duplantis, New Orleans, La., for appellees.

Edward M. Heller, Bernard H. Berins, and Jan Marie Hayden of Bronfin, Heller,

Steinberg & Berins, New Orleans, La., for defendants.

E. Harold Saer, Jr., Robert S. Rooth, and Harry R. Holladay of Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for appellant.

## MEMORANDUM AND ORDER

SEAR, District Judge.

Appellees are nine individuals who are either current or former senior management personnel of Martin Exploration Company. Appellant is the Committee of Unsecured Creditors (hereinafter the "Committee") of the Martin Exploration Company (hereinafter "MECO").

MECO filed for relief under Chapter 11 of the Bankruptcy Code on July 16, 1982. MECO's founders, Kenneth Martin and Susan Taylor Martin, jointly filed for similar relief in a separate proceeding. On February 2, 1983, appellees filed the adversary proceeding under Bankruptcy Rule 7001 which forms the basis of this appeal. Appellant intervened as a party-defendant in that proceeding.

The matter was heard before the Honorable T.M. Brahney, III, United States Bankruptcy Judge, upon a Joint Stipulation of Fact. Appellees sought to have MECO transfer to them certain overriding royalty interests. These interests were allegedly earned by appellees by virtue of certain letter agreements entered into by appellees individually and MECO upon their acceptance of employment.

The bankruptcy judge entered judgment in favor of appellees on February 27, 1985. The bankruptcy judge ordered MECO and the Martins to deliver to appellees all monies attributable to the overriding royalty interests earned by appellees, plus legal interest thereon. The bankruptcy judge further ordered MECO and the Martins to deliver to appellees all overriding royalty interests earned by them under the letter agreements with MECO.

## I.

MECO began its business of exploring for, developing and producing oil and gas in 1973. In order to provide an incentive to attract high quality personnel, Kenneth Martin decided that the company would transfer overriding royalty interests to its employees during the term of employment. The transfer of these interests was accomplished by letter agreements between the employees and MECO. The letter agreements set forth the exact percentile interest to be acquired by the individual employee "in all nonproducing oil and gas leaseholds now owned or hereafter acquired by MECO during the term of [the employee's] employment." MECO then made certain assignments, pursuant to the agreements, directly to the employees. These assignments were recorded in the conveyance records of the appropriate parishes, and proceeds from production attributable to the interests assigned were distributed by MECO to the various assignees.

As MECO's business grew, the recordation of the assignments was neglected. MECO's management therefore determined that the unrecorded interests earned by the employees should be formally assigned. Toward that end, MECO entered into a Nominee Agreement with Kenneth Martin, as nominee, effective August 29, 1978. Under the agreement the unassigned interests were transferred to the nominee to administer those interests. A substantial portion of the interests claimed by appellees was assigned to the nominee on that date, and those assignments were soon recorded. Numerous employees thereafter received formal assignments of their interests directly from the nominee. However, formal assignments from MECO to the nominee and in turn from the nominee to appellees were not effectuated in every instance. Those interests not transferred form the gist of this case.

## II.

The standard of appellate review to be applied in this case is set out in Rule 8013 of the Bankruptcy Rules as follows:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judg-

ment, order or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Bankruptcy Rule 7052 makes Rule 52 of the Federal Rules of Civil Procedure applicable to adversary proceedings in bankruptcy. Rule 52 also incorporates the "clearly erroneous" standard.

Each finding of fact of the bankruptcy judge is supported by the Joint Stipulation of Fact and the exhibits attached thereto. Accordingly, I find no error in regard to the factual conclusions reached by the bankruptcy judge.

### III.

The bankruptcy judge drew seven conclusions of law which form the basis of this appeal.

1. *The letter agreements are legally enforceable and sufficient to transfer title to the interests covered thereby to appellees.*

■ As between the parties, the letter agreements entered into between MECO and appellees are fully enforceable and affect a transfer of title to the overriding royalty interests described in them. Louisiana Revised Statute 9:2756 provides in pertinent part:

· All sales, contracts and judgments affecting immovable property, which shall not be recorded, shall be utterly null and void, except between the parties thereto.

It is also clear that employment agreements such as the ones at issue here are sufficient to transfer title to the royalty interests. *Wurzlow v. Placid Oil Co.,* 279 So.2d 749 (La.App. 1st Cir.1973); *Sloane v. Davis,* 397 So.2d 1376 (La.App.3d Cir.1981).

2. *Those interests formally assigned from MECO to the nominee and recorded are not part of MECO's estate in bankruptcy.*

■ Appellees claim the overriding royalty interests which have been formally

assigned from MECO to nominee by acts under private signature duly acknowledged and recorded. Each of these assignments provides that MECO "has transferred, assigned and conveyed, and by these presents does hereby TRANSFER, ASSIGN and CONVEY" to the nominee certain overriding royalty interests. The assignments were duly recorded in the appropriate parish conveyance offices. At that time, third parties were on notice that those interests were no longer owned by the debtor.

Section 541 of the Bankruptcy Code defines property included in the bankrupt's estate upon filing by the debtor for relief under the Bankruptcy Code. According to Section 541(a)–(1), the estate is comprised of, *inter alia:*

... all legal or equitable interests of the debtor in property as of the commencement of the case.

At the time of commencement of this case, MECO had neither legal nor equitable title to the interests conveyed by formal assignment to the nominee.

3. *Any title currently held of record by MECO or the nominee to the interests claimed by appellees is bare legal title held in constructive trust for the benefit of appellees.*

A constructive trust has been defined as:

[a] relationship with respect to property subjecting the person by whom title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property.

Restatement (Second) Trusts § 1(e) (1959).

The letter agreements at issue herein contain the following pertinent language:

[I]t is understood that while this agreement is in effect, you shall have and own a "present possessory" overriding royalty interest in all nonproducing oil and gas leaseholds now owned or hereafter

acquired by MECO during the term of your employment...

      *    *    *    *    *    *

Assignment of your overriding royalty interests as they apply to particular leaseholds shall be made by MECO as soon as possible after the date a particular leasehold is either placed on production or placed in a production unit of whatever nature, whichever is the earliest date, but it is understood that you own a "present possessory interest" in the leaseholds effective as of the date of this agreement.

If MECO's intentions were not clearly evidenced by the terms of those contracts, the Nominee Agreement provides clarification:

In order to simplify operational procedures under certain agreements entered into between Martin Exploration Company, a Delaware corporation ("Company"), and third parties relating to the ownership of certain overriding royalty interests by certain of its employees (the "Interests"), Company deems it advisable to appoint a nominee to hold title to the Interest and to administer the same ...

■ The question of whether a constructive trust has been established is a matter of state law. *In re Minton Group, Inc.*, 28 B.R. 774 (Bkrtcy.N.Y.1983). Appellant argues that Louisiana does not recognize the doctrine of constructive trusts, citing *Schwegmann v. Schwegmann*, 441 So.2d 316 (La.App. 5th Cir.1983), *writ. den.*, 443 So.2d 1122 (1984), for that proposition. Although the Court of Appeal in *Schwegmann* did so hold, I conclude that the law of this State is otherwise. The cases relied on in *Schwegmann* antedate recent Louisiana jurisprudence to the contrary which I find more persuasive.

In *Grand Isle Campsites, Inc. v. Cheek*, 262 La. 5, 262 So.2d 350 (1972), the Louisiana Supreme Court held that a promoter was liable to his corporation for a secret profit that he had made. In finding a breach of the promoter's fiduciary duty and trust placed in him by his joint venturers, the Court relied on 46 Am.Jur.2d Joint Venturers § 51, which provides:

Profits wrongfully diverted from a joint venture are subject to a constructive trust, and any profits realized from self-dealing belong to the venture.

In *Decatur-St. Louis Combined Equity Properties, Inc. v. Abercrombie*, 411 So.2d 677 (La.App. 4th Cir.1982), a partnership and various partners brought an action against other partners seeking a declaratory judgment vesting title to certain property in the name of the partnership. The property had been purchased in the name of the defendants, and the partnership and merely placed in the name of the defendants for the sake of convenience. The court held that while legal title may have vested in the defendants, equitable title had vested in the partnership.

■ The relationship of appellees to both MECO and the nominee is sufficiently analogous to the relationships present in *Grand Isle* and *Decatur-St. Louis* to support the bankruptcy judge's finding of a constructive trust. A plain reading of the letter agreements and the Nominee Agreement indicates that the overriding royalty interests were being held by MECO and the nominee for the benefit of the employees. They had earned their right to title to those interests, and all that remained to be done were the formal assignments and their recordation. Both MECO and the nominee were under a fiduciary duty to assign those interests, and it would be inequitable to hold that by their failure to do so, appellees must be deprived of that which they have rightfully earned.

4. *Because appellees are beneficiaries of a constructive trust, Section 541(d) excludes equitable title to their interests from the debtor's estate.*

Section 541(d) provides in pertinent part: Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

The bankruptcy judge's conclusion in this respect stands or falls, per force, on a finding of a constructive trust. Having found the existence of a constructive trust, I further find that equitable title to the overriding royalty interests does not form a part of the debtor's estate. When it appears that the debtor is only a trustee and has no beneficial interest in or claim against the property, the court ought to turn it over to its true owner whenever possible. *Todd v. Pettit*, 108 F.2d 139 (5th Cir.1939). Accordingly, since MECO and the nominees have no beneficial claim to the appellees' overriding royalty interests, the property must be turned over to the true owners.

5. *Appellant has no standing to assert avoidance power under Section 544 of the Bankruptcy Code.*

Section 544(a)(3) provides:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

The Code gives no avoidance power to creditors of the debtor. The appellant is the Committee of Unsecured Creditors. As creditors, the Committee has no standing to assert the avoidance powers of § 544(a)(3). *Matter of Milam*, 37 B.R. 865 (Bkrtcy.Ga. 1984).

6. *Alternatively, Section 544 does not provide a basis for avoiding appellees' title to the overriding royalty interests claimed herein.*

Having held that appellant lacks standing to assert the § 544(a)(3) avoidance defense, I do not reach this issue.

7. *A bankruptcy court is a court of equity, guided by equitable doctrines and principles.*

It is, of course, axiomatic that the bankruptcy courts are courts of equity. *S.E.C. v. U.S. Realty and Improvement Co.*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940). Appellant contends that the bankruptcy judge, in ordering relief in the form of specific performance, erred in that such relief was not historically favored in Louisiana at the time this action was instituted. Besides the fact that I am not necessarily in agreement with appellant's historical perspective (see, e.g., *J. Weingarten, Inc. v. Northgate Mall, Inc.*, 404 So.2d 896 (La.1981)), specific performance is an equitable remedy perfectly suited to court in equity. As the United States Court of Appeals for Fifth Circuit has recently held, in an adversary proceeding in bankruptcy, the trust beneficiary in entitled to recover its equitable interest and not merely a monetary reward. *Matter of Quality Holstein Leasing*, 752 F.2d 1009 (5th Cir.1985).

Accordingly, the order of the bankruptcy judge is AFFIRMED.