**HALEY, CHISHOLM & MORRIS, INC., Appellant,**

**v.**

**Helen P. PARRISH, Trustee, Appellee.**

**Civ.A. No. 90–0034–C.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

May 10, 1991.

---

Douglas E. Little, Robert M. Musselman & Assoc., Charlottesville, Va., for appellee.

W. Stephen Scott, Paxson, Smith Gilliam & Scott, P.C., Charlottesville, Va., for appellant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

The matter presently before the court is an appeal from the bankruptcy court's order and memorandum opinion entered in this case on June 22, 1990. All concerned parties have filed legal memoranda, and they have agreed to waive oral argument in the case. Accordingly, this matter is ripe for resolution, but before turning to an analysis of the various assignments of error and assertions made upon appeal, a brief recounting of the pertinent facts is appropriate.

### Factual Background

The appellant in this case, Haley, Chisholm & Morris, Inc., is a real-estate developer who established the Quintfield subdivision in Albemarle County, Virginia. The appellant sold several lots in the Quintfield sub-division to Robert Leslie Martin, III,[1] a general contractor, and on one of these lots, the appellant and Martin decided to construct, pursuant to an executed joint-venture agreement, a house that would be later sold for profit. According to the terms of the joint-venture agreement, the appellant would provide up to $96,000.00 in funds for the construction of the house (Martin would be liable for construction costs that surpassed $96,000.00), and Martin would provide the lot and would serve as general contractor on the project. Once the house was completed and sold, the agreement provided that, of the amount received for the project by the joint venture, $96,000.00 would go to the appellant as reimbursement for the proceeds that it contributed for the construction of the house, $20,000.00 would go to Martin as payment for the lot on which the house was constructed, and the remainder would be divided equally between the two joint-ven-

1. Robert Leslie Martin, III, will be referred to in this memorandum opinion as either "Martin" or

turers.[2]

Martin was not, however, required by the joint-venture agreement to segregate the funds that he received from the appellant for the construction costs, and as things developed, Martin actually commingled these funds with other proceeds held in his bank accounts and used some of these funds to pay debts unrelated to the goal of the joint venture. Furthermore, Martin, although required by the joint-venture agreement to submit monthly itemized statements for his costs in constructing the house, never provided such itemized statements. Finally, Martin, pursuant to the joint-venture agreement, was allowed to retain title to the property on which the house was built, and no security interest in the property was retained or recorded by the appellant. As with many of the "best laid schemes o' mice an' men," R. Burns, *To a Mouse, reprinted in The New Oxford Book of English Verse* (1972), however, this joint venture faltered, and on March 6, 1989, Martin filed his petition for relief under Chapter 7 of the Bankruptcy Code.

Subsequent to the filing of the petition, the appellee, Helen P. Parrish, was appointed as trustee to administer Martin's estate. As part of the proceedings before the bankruptcy court, several of the lots that were owned by Martin in the Quintfield sub-division were sold by the trustee, and the appellant laid claim to the proceeds from the sale of the lot that it had agreed to develop jointly with Martin. The appellant contended that the funds generated from the sale of the lot in question were its property and, therefore, asked the bankruptcy court to impose a constructive trust on the funds for its benefit. After resolving several other issues that have not been appealed to this court, the bankruptcy court declined to impose a constructive trust on the proceeds derived from the lot in question. The bankruptcy court held that, before a constructive trust would be imposed upon the facts of the present case, the debtor's

breach of some fiduciary duty had to be shown, and the bankruptcy court concluded that no such breach existed in the instant case to make proper the imposition of a constructive trust. For this reason, the bankruptcy court concluded that the appellant should be treated no differently than the other unsecured creditors seeking to recover from the debtor's estate.

The matter presently before the court is an appeal from the bankruptcy court's refusal to impose a constructive trust in the instant case. Before this court, the appellant asserts that the bankruptcy court's decision in this regard was clearly erroneous and should be reversed. Additionally, the parties have asked this court—in lieu of remanding the case immediately to the bankruptcy court—to rule, if a constructive trust is imposed, on whether the trustee has, nonetheless, superior statutory rights to the proceeds in question than those held by the appellant as beneficiary of the constructive trust. Both of these issues have been thoroughly briefed by the parties, and since they have waived oral argument in this appeal, the issues are ripe for resolution by this court.

### Legal Analysis

A constructive trust is a device created by equity to redress actual or constructive fraud, to prevent the perpetration of injustice, or to curtail unjust enrichment. *See Campbell v. Corpening*, 230 Va. 45, 49, 334 S.E.2d 589, 591 (1985) ("Constructive trusts arise, independently of the intention of the parties, by construction of law.... They occur not only where property has been acquired by fraud or improper means, but also where it has been fairly and properly acquired, but it is contrary to the principles of equity that it should be retained, at least for the acquirer's own benefit.") (emphasis deleted) (internal citations omitted). Although arising in a variety of contexts, constructive trusts are often employed when one party in a fiduciary

"the debtor."

**2.** The agreement also provided that losses, if incurred, would be shared by the parties, and for this and the reasons more fully developed in

the body of this memorandum opinion, their relationship, viewed in its entirety, does appear to the court to be a bona fide joint venture.

capacity vis-a-vis another party abuses that relationship to his improper benefit. *See Horne v. Holley*, 167 Va. 234, 188 S.E. 169 (1936). In that instance, the law will step in and act to protect the interests of the abused party against the malfeasance of the fiduciary. *See Klingstein v. Rockingham Nat'l Bank*, 165 Va. 275, 182 S.E. 115 (1935).

■ Increasingly, constructive trusts are employed in the bankruptcy context. *See, e.g., Mid–Atlantic Supply, Inc. v. Three Rivers Aluminum Co.*, 790 F.2d 1121 (4th Cir.1986); *see generally* 9A Am. Jur.2d *Bankruptcy* §§ 237–42, 259–66 (1980); 2 *Collier on Bankruptcy* 541.07 (3rd ed.1991). For example, a constructive trust would be appropriate in a bankruptcy case when the debtor was in a partnership or joint venture and violated his fiduciary responsibilities to another party. *See In re Mahan & Rowsey, Inc.*, 817 F.2d 682 (10th Cir.1987), *aff'g*, 62 B.R. 46 (W.D.Okla.1985), *aff'g in part and rev'g in part*, 35 B.R. 898 (Bankr.W.D.Okla.1983), *later proceeding*, 37 B.R. 530 (Bankr.W.D.Okla.1984); *see also Kasishke v. Keppler*, 158 F.2d 809 (10th Cir.1947). In that example, the injured partner or joint venturer would be given priority in recovering from the debtor's estate particular money or property that was improperly obtained from him by the debtor. *See id.* at 684; *see also Bethlehem Steel Corp. v. Tidwell*, 66 B.R. 932 (M.D.Ga.1986). When proposing to employ the constructive-trust device in the bankruptcy context, however, a federal court must look to relevant state law to determine whether such action is appropriate. *See In the Matter of Pinetree, Ltd.*, 876 F.2d 34 (5th Cir.1989); *Boyd v. Martin Exploration Co.*, 56 B.R. 776 (E.D.La. 1986).

■ In the Commonwealth of Virginia, both partnership and joint-venture relationships are regarded as imposing fiduciary responsibilities on their participants, and any breach of those responsibilities can result in the creation of a constructive trust. *See Horne*, 167 Va. at 239–40, 188 S.E. at 172 ("A joint [venture] has been aptly defined as a special combination of two or more persons, where in some specific venture[,] profit is jointly sought without any actual partnership or corporate designation.... The obligations ... of persons engaged in a joint [venture] are similar to those existing between partners. The relationship is one of mutual trust and confidence. The utmost good faith, the most scrupulous honesty, is expected of each party toward the other. Each must guard the interest of his co-[venturer] equally with his own and must make a frank and full disclosure of all material facts. Each is regarded by a court of equity as a trustee or agent of the other with regard to the enterprise to be undertaken.... Within the scope of the enterprise[,] they stand in a fiduciary relation each to the other, and are bound by the same standards of good conduct and square[-]dealing as are required between partners. This obligation begins with the opening of negotiations for the formation of the syndication, applies to every phase of the business which is undertaken, and continues until the enterprise has been completely wound up and terminated.... It is well-settled that[,] where one person sustains a fiduciary relation to another[,] he cannot acquire an interest in the subject matter of the relationship adverse to such other party. If he does so[,] equity will regard him as a constructive trustee and compel him to convey to his associate a proper interest in the property or to account to him for the profits derived therefrom.").[3] Under Virginia law, how-

**3.** *See also Roark v. Hicks*, 234 Va. 470, 475, 362 S.E.2d 711, 713 (1987) ("A joint venture exists where two or more persons enter into a special combination for the purpose of a specific business undertaking, jointly seeking a profit, gain, or other benefit, without any actual partnership or corporate designation.... The relationships and duties of joint venturers and partners, toward one another, are essentially the same....

Accordingly, the rules of law governing the rights, duties, and liabilities of joint venturers are substantially the same as those which govern partnerships."); *Klingstein*, 165 Va. at 281, 182 S.E. at 119 ("[I]t matters not in whose name the property may stand, as the owner of legal title; the property in whose name it stands being treated as a trustee of the partnership, and accountable accordingly.").

ever, the party seeking to impose a constructive trust on money or property held by another party must show that some fiduciary duty has been violated by the latter party. *See In re Crotts*, 87 B.R. 418 (Bankr.E.D.Va.1988). Moreover, a constructive trust can be created only when there is clear and convincing evidence to support its creation, *see Greenspan v. Osheroff*, 232 Va. 388, 351 S.E.2d 28 (1986), and finally, under both Virginia and federal bankruptcy laws, funds or property must be directly traceable before a constructive trust will attach. *See id.; Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612 (1st Cir.1988); *In re Teltronics, Ltd.*, 649 F.2d 1236 (7th Cir. 1981); *In re Kennedy & Cohen, Inc.*, 612 F.2d 963 (5th Cir.), *cert. denied*, 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980); *Johnson v. Morris*, 175 F.2d 65 (10th Cir. 1949).

This tracing requirement, in particular, comports with overall policy concerns of bankruptcy law and justifies the preferential treatment that constructive-trust beneficiaries receive over unsecured creditors concerning the distribution of the debtor's estate. *See Connecticut General*, 838 F.2d at 618–19. As a general matter, federal bankruptcy law affords priority only to those creditors who, prior to the filing of a petition, have openly announced their claims by recording perfected security interests. *See* T. Jackson & R. Scott, *On the Nature of Bankruptcy: An Essay on Bankruptcy Sharing and the Creditors' Bargain*, 75 Va.L.Rev. 155 (1989). Only when a creditor jumps through all of the necessary hoops, federal bankruptcy law posits, can that creditor satisfy his claim from a debtor's estate before the unsecured creditors get a chance at the feeding trough. *See id.* An exception to this general policy seems to exist in the case of a party claiming the benefit of a constructive

trust. *Cf. In re Behring Internat'l, Inc.*, 61 B.R. 896, 902 (Bankr.N.D.Tex.1986) ("The reluctance of bankruptcy courts to impose constructive trusts without a substantial reason to do so stems from the recognition that each unsecured creditor desires to have his particular claim elevated above the others. Imposition of a constructive trust clearly thwarts the policy of ratable distribution and should not be impressed cavalierly.... Impressing a constructive trust should be done only after a showing that a wrongdoing of some sort or a breach of fiduciary duty occurred and a tracing by a claimant to a specific *res*.").

■ In that instance, the party has not necessarily done anything to announce his claim to the public, but he is still allowed to satisfy his claim from the debtor's estate before the claims of unsecured creditors are considered. *See Crotts*, 87 B.R. at 421.[4] Such priority can be justified, however, only when it is realized that the funds or property at issue never truly belonged to the debtor (but remained the funds or property of the beneficiary of the constructive trust) *and* only when the beneficiary of the constructive trust can indicate the funds or property that he is claiming with a high degree of specificity. When these two conditions are met, the debtor's estate should satisfy the claims of the beneficiary of the constructive trust before turning to the claims of the unsecured creditors because there are specific funds or property that can be traced to the beneficiary of the trust, and the estate will not be robbing "Peter to pay Paul," John Florio, *Firste Fruites* (1578).

In other words, just as only a creditor with a perfected security interest can gain priority over unsecured creditors regarding the proceeds of a debtor's estate, only a party who can trace to himself funds or property within the debtor's estate can re-

---

4. The bankruptcy court in the present case seemed particularly moved by the apparent inequities that exist when a constructive trust is imposed after the initiation of bankruptcy proceedings, and the beneficiary of the constructive trust is thereby allowed to pull the rug out from under the unsecured creditors. This court believes that inequities of this type of situation are ameliorated by a strict tracing requirement in much the same way that the inequities of extending priority to secured creditors are ameliorated by requiring them to record their claims *ex ante* to perfect their priority status and thereby provide unsecured creditors with the notice that they need to make their own risk assessments in extending credit.

cover the funds or property as the beneficiary of a constructive trust. In short, the tracing requirement justifies the priority position that constructive-trust beneficiaries are given in the bankruptcy context in the same manner that the recording requirement justifies the priority position that secured creditors are given, and just as there are certain steps that a secured creditor must take to protect his priority position, there are also steps—the debtor being required, for example, to segregate joint-venture money in a separate checking account—that the beneficiary of a constructive trust must take to protect his priority position. If the party attempting to impose a constructive trust does not take these steps to facilitate tracing, then he, like his brother the secured creditor who has not recorded his security interest, will be treated, after the initiation of bankruptcy proceedings, no differently than an unsecured creditor. *See Connecticut General,* 838 F.2d at 614; *Teltronics,* 649 F.2d at 1239.

 In the present case, the bankruptcy court declined to create a constructive trust because it did not believe there was clear and convincing evidence of the debtor's breach of some fiduciary duty to the appellant to make such action proper. Before this court, the appellant asserts that the bankruptcy court erred in declining to impose a constructive trust because the debtor, pursuant to his joint-venture agreement with the appellant, agreed to provide the appellant with monthly accounting statements detailing the manner in which the appellant's funds were utilized in building the house on the lot in question, and this failure constitutes a breach of his fiduciary duties to the appellant that makes appropriate the imposition of a constructive trust. Additionally, the appellant contends that the debtor breached his fiduciary responsibilities when he improperly used its contributions to the joint venture to pay unrelated debts. While this court agrees that a joint venture agreement did exist between the debtor and the appellant and that the debtor seems to have breached his fiduciary duties to the appellant, this court, nonetheless, believes that the decision of the bankruptcy court should be affirmed for one important reason: the appellant cannot trace with precision its joint-venture contributions into the debtor's estate.

Unlike other cases in which constructive trusts have been imposed in the bankruptcy context, the appellant in the instant case cannot point to a specific "something" in the debtor's possession that, in actuality, belongs to the appellant. *See Crotts,* 87 B.R. at 419 (an automobile in the debtor's possession that was really owned by the claimant); *Mid–Atlantic Supply,* 790 F.2d at 1123 (an uncashed check in the debtor's possession that really belonged to the claimant); *Campbell,* 230 Va. at 47, 334 S.E.2d at 591 (contract rights exploited by the debtor that really belonged to the claimant).[5] Furthermore, the appellant in the instant case cannot point to the proceeds of a specific bank account that was created solely to hold money belonging to the joint venture.[6] The appellant in the instant case, instead, maintains that he provided the debtor with cash to accomplish the goal of the joint venture and that he should now be entitled to the imposition of a constructive trust on funds generated by the improvements on the property in question that its money "undeniably" purchased.

---

5. Nothing in this court's memorandum opinion should be regarded as stating that only items of physical property can be the subject of a constructive trust. The court has simply likened the present case to a situation in which a debtor has in his possession a chair, a pair of pajamas, or a motorcycle in order to illustrate the tracing requirement. In this court's estimation, a claimant, in order to recover from the debtor's estate as the beneficiary of a constructive trust, must properly trace his money, etc. within the debtor's estate with a precision comparable to that of being able to claim a chair, a pair of pajamas, or a motorcycle.

6. The court notes that the appellant in the instant case was represented by counsel when the joint venture was initiated with the debtor. The court believes that if measures were taken to assure that the appellant's funds were segregated from the debtor's—by creating, for example, a separate bank account—then the likelihood of this controversy ever arising would have been greatly diminished.

372

What the appellant will not acknowledge, however, is that its money, along with all other cash coming to the debtor in the course of his construction business, was deposited in commingled operating accounts, and the debtor paid for the improvements on the lot in question and all of his other business expenses from the balance of his operating accounts. Therefore, the appellant, during the existence of the joint venture, took none of the steps that have been held necessary to facilitate tracing in the bankruptcy context[7] and should not be entitled to a priority status for recovering from the debtor's estate. *See Connecticut General,* 838 F.2d at 620 ("In order to establish such ... right[s] as trust beneficiary, a claimant must make two showings; first, the claimant must prove the existence and legal source of a trust relationship; second, the claimant must identify the trust fund or property and, where the trust fund has been commingled with general property of the bankrupt, sufficiently trace the property or funds[.]"); *Mahan,* 817 F.2d at 685; *Teltronics,* 649 F.2d at 1237. Although the appellant submits that, despite the commingling, most of the contributed funds were ultimately used on the joint-venture project, this is nothing more than speculation on the appellant's part.[8] In short, the appellant cannot trace his money with particularity in the present case, and as a result, it has not presented the clear and convincing evidence necessary to justify the imposition of a constructive trust on that portion of the debtor's estate in question. *See Greenspan,* 232

Va. at 390, 351 S.E.2d at 36. The appellant, hence, will have to have to be content with the lot of an unsecured creditor.[9]

### Conclusion

For the above-stated reasons, the order of the bankruptcy court in the instant case, dated June 22, 1990, must be affirmed.

7. Citing *Republic Supply Co. of Calif. v. Richfield Oil Co.,* 79 F.2d 375 (9th Cir.1935), the appellant reminds the court that a constructive-trust beneficiary can still recover contributed funds even if those funds have been used to buy certain assets. As long as the funds can be traced into the assets into which they have been converted, the appellant argues, the constructive-trust beneficiary should be able to recover. The court agrees with this proposition generally, but notes that there has not been a proper tracing in this particular case.

8. The appellant cannot show, for example, that its money was not used by the debtor to pay his other bills and that other parties' money was not spent on building the house on the lot in question. If these things did, indeed, happen, the court, by imposing a constructive trust on

the proceeds from the sale of the lot in question, would allow the appellant, whose money was already spent on unrelated debts, to recover money contributed by other unsecured creditors. This is an inequitable result and explains the need for a tracing requirement.

9. Since the court has resolved that the appellant has not presented the clear and convincing evidence that is necessary to support the imposition of a constructive trust in the present case, it is not necessary to discuss the second issue on appeal—whether the trustee has superior rights in the present case than those of a constructive-trust beneficiary—because the second issue presumes the imposition of a constructive trust. Accordingly, the second issue raised on appeal has not been discussed.