**POLLACK v. SAMPSELL et al.**

No. 11977.

United States Court of Appeals
Ninth Circuit.

May 3, 1949.

Peter T. Rice, of Los Angeles, Cal., for appellant.

Craig & Weller and A. R. Early, Jr., all of Los Angeles, Cal. (Thomas S. Tobin, of Los Angeles, Cal., of counsel), for appellee.

Before STEPHENS, HEALY, and POPE, Circuit Judges.

POPE, Circuit Judge.

Appellant here asserts his right, as beneficiary under trust deeds of orchard lands, to the proceeds of a crop of oranges harvested by the trustee in bankruptcy while appellant was prevented by order of the bankruptcy court from completing a sale of the lands under powers of sale contained in the trust deeds. The district court confirmed the referee's determination that appellant had no interest in the crop.

Judd Bradley and wife owned the land upon which the crop was grown. They had given trust deeds to appellant's predecessor to secure the payment of notes. The instruments, executed and recorded as deeds of trust of real property, but not conforming to the requirements of California Civil Code, Section 2956, relating to mortgages of crops, provided that the holder of the trust deeds had the right "as additional security to collect the rents, issues and profits" of the real property, which was situated in Tulare County, California.

On July 1, 1947, there had occurred defaults in the payment of two installments due under the notes and trust deeds, and on July 10, 1947, the appellant filed for record in the office of the county recorder a notice of default pursuant to California Civil Code Section 2924. Thereafter the appellant gave notice of sale of the real property, the sale to be held on October 31, 1947.

From the time of the recording of the notice of default and until after the 31st day of October, 1947, a crop of oranges was growing upon the land. In the meantime the Bradleys gave to Raymond M. Anderson and wife a mortgage upon the crop, to secure a preexisting indebtedness. This was recorded September 13, 1947.

On October 9, 1947, 22 days prior to the date of the scheduled sale, each of the Bradleys filed in the court below a petition for an arrangement under Chapter XI of the Bankruptcy Act. On the same day the petition was referred to a referee in bankruptcy and also on the same day the referee, upon the petition of the debtors, issued an order to show cause and restraining order requiring the appellant to show cause why he should not be enjoined and restrained from enforcing his lien or liens upon the Bradley lands, and restraining him from doing any act to that end during the pendency of the hearing on the order to show cause.

The record does not disclose when this order was served upon the appellant, but appellant appeared on October 16 and objected to the granting of the injunction order prayed for. The stay of foreclosure proceedings thus ordered appears to have remained effective until December 24, 1947,

and in the meantime the appellee had been appointed a receiver and had initiated proceedings before the referee and against the appellant to procure an adjudication that the appellant had no right in or to the crops growing upon the real property. In those proceedings the referee issued an order directed to the appellant requiring him to appear on November 10, 1947, to show cause why an order adjudging that he had no interest in the crops should not be made.

On the date required appellant appeared and filed his objections to the order to show cause, claiming that the crops were part of the real property, setting forth the steps taken to foreclose the trust deed, asserting that the land was of insufficient value to pay the secured indebtedness and asserting that to deprive the holder of the trust deed of the crops would permit an unfair advantage to be taken on behalf of the unsecured creditors and deprive the appellant of his security and lien, without just compensation.

Before the referee had acted upon the matter thus at issue before him, the crop had matured and it was harvested and sold by the receiver through an arrangement approved by the referee, and the net proceeds of the sale of the crop were impounded awaiting determination of these proceedings.

The proposed arrangement was never effectuated and adjudication in bankruptcy was made December 18, 1947, and the appellee appointed trustee. On December 24, 1947, the order restraining foreclosure proceedings was vacated and appellant granted permission to proceed to foreclose. Sale was had under the trust deeds on January 7, 1948, but after the crop had been harvested and disposed of in the manner indicated.

It is conceded that the sale of the land resulted in a deficiency in excess of the amount for which the crop had been sold. On February 9, 1948, the referee made findings of fact and conclusions of law and an order to the effect that the appellant was adjudged to have no right, title or interest in the crop of oranges or the proceeds of sale thereof. At the same time the referee adjudged the Anderson's crop mortgage void as against the receiver, as an unlaw-

ful preference, but directed that it be "preserved for the benefit of this estate."

Upon petition by the appellant for a review of the referee's findings and order, the district court confirmed the order of the referee and this appeal is taken from that order.

The rights asserted by the appellant are predicated upon his claim that had he been permitted to proceed with the scheduled sale on October 31, 1947, the purchaser at the sale would have acquired title to the land, and with it title to the then unharvested crop of oranges, and this notwithstanding the existence of the crop mortgage to the Andersons. He relies upon the case of Penryn Co. v. Sherman-Worrell Fruit Co., 142 Cal. 643, 76 P. 484, 100 Am.St.Rep. 150.

The contention of the appellant is that since he had initiated proceedings which in regular course would have resulted in his securing the benefit of the crop of oranges, the intervention of the proceedings in bankruptcy ought not to take the benefit from him. He does not question the power of the referee to restrain his scheduled foreclosure sale, but asserts that it was the duty of the bankruptcy court to preserve all existing equities as of the date of the petition and that therefore he should be entitled to the net proceeds of the sale of the crop which was made under the direction of the receiver-trustee.

What causes difficulty in cases of this character is that the mortgagee is never finally sure of the crop until he has in some way reduced the real property to his possession, either through foreclosure, or by agreement with the mortgagor or grantor, or through the appointment of a receiver. If this be not accomplished before the crop has ripened and been harvested, the mortgagor or those claiming under him independently of the mortgage or trust deed will acquire good title to the crop. Jones on Mortgages, 8th Ed., Sec. 860.

On the other hand, under the decision in Penryn Co. v. Sherman-Worrell Fruit Co., cited above, if the beneficiary under the deed of trust completes the sale authorized by the trust deed while the crop

is yet unharvested, the purchaser at the sale acquires the crop both as against the grantor under the trust deed and as against his grantees under a crop mortgage executed after the date of the trust deed. In that case the Supreme Court of California said 142 Cal. 643 at page 645, 76 P. 484 at page 485: "Under such deeds of trust there is no redemption after sale pursuant to its provisions. A deed at once passes to the purchaser, as was the fact here, and he becomes entitled to immediate possession, which in this case was at once taken. The crop in question was then growing on the trees, and was part of the realty, and the purchaser's title by relation took the date of the trust deed. The purchaser was at least in as good a position as and had rights equal to those of a purchaser at foreclosure sale holding a deed, and having possession after the period of redemption had expired. Treating the sale here as a foreclosure where there is no right of redemption, and in view of the entry into possession under the sale by the purchaser, it is quite clear that neither the mortgagor—the grantor in the trust deed—nor his grantees under a crop mortgage executed subsequently to the trust deed would have the right to crops not severed at the time of the purchaser's deed and entry."

When a petition in bankruptcy is filed by or against the grantor in such a trust deed, the question as to what the bankruptcy court should do with the claim of the holder of the trust deed to growing crops or to other rents, issues or profits of the real property cannot be answered by simply saying that it is the duty of the bankruptcy court to preserve all liens then existing. The difficulty arises out of the fact that it is not always apparent that the holder of the trust deed would have secured the crop or other income from the property even though no bankruptcy had intervened. Thus if there be no default until after the crop is harvested, the holder of the trust deed will have no way to take it; or even if there be default he may choose to take

no steps to foreclose or otherwise obtain possession of the land until harvesting has occurred. If it may be said that he has a lien upon the crop, clearly the lien is subject to these and other contingencies. Such is generally the character of the mortgagee's right not merely to crops, but to all rents, issues and profits of the mortgaged land, in whatever form they may be when claimed. Jones on Mortgages, 8th Ed., Sec. 976.

Nevertheless, the courts of appeals in some circuits, in dealing with asserted rights to rents, issues or profits of real property, have held it the duty of the bankruptcy court to protect the holder of the trust deed or the mortgagee notwithstanding the contingent character of his lien. In re Wakey, 7 Cir., 50 F.2d 869, 75 A. L.R. 1521; Central Hanover Bank & Trust Co. v. Philadelphia & Reading Coal & Iron Co., 3 Cir., 99 F.2d 642.

In the view of these courts, the application of equitable principles requires such a result, perhaps upon the ground that it should be considered that the mortgagee or holder of the trust deed would do that which he ought to do, in his own interest, notwithstanding there may be no proof that he has taken any steps in that direction. The courts of appeals in other circuits including this court, have declined to go so far.[1]

These courts are agreed, however, that where the holder of the trust deed or mortgage has either by appropriate steps taken prior to the bankruptcy, or by timely application to the bankruptcy court, actively undertaken to obtain the rents or profits of the real property for application upon the mortgage indebtedness, it is then the duty of the bankruptcy court to preserve the rents and profits for the holder of the trust deed or mortgage. These decisions may be justified upon the ground that in such cases the diligence of the mortgagee has demonstrated that he would probably have realized upon the rents or profits had bankruptcy not intervened.[2]

---

[1] See In re Hotel St. James Co., 9 Cir., 65 F.2d 82; Tower Grove Bank & Trust Co. v. Weinstein, 8 Cir., 119 F.2d 120 (collecting and summarizing the cases); In re Humeston, 2 Cir., 83 F. 2d 187.

[2] "And the insurance company was not inactive. It asserted its right to the issues and profits, first when it sought the appointment of a receiver in the foreclosure action in the state court, and second when it prayed the bankruptcy court

It is our view that the rule just mentioned should be applied in this case. Here the appellant on July 10, 1947, following the second default in payment of principal, made and filed for record in the proper office a notice of default and of his election to sell the property under a power of sale in the trust deeds. Under the provisions of section 2924 of California Civil Code, the filing of such notice is required as a step preliminary to the exercise of the power of sale. Under that section three months must elapse before notice of sale may be given. Thus, when the petitions for an arrangement were filed on October 9, 1947, the appellant had then done all that he was permitted to do in the direction of foreclosing his trust deeds by a sale under the power of sale. The findings recite: "That a sale of all the real property under the trust deed was regularly scheduled for October 31, 1947, at 2 o'clock P.M." Also: "But for the restraining order against Barnett Pollack * * * from proceeding with the foreclosure sale on October 31, 1947, Barnett Pollack would have sold the said real property." The findings further disclose that at the time scheduled for the sale, the crop of oranges was still on the trees.

Appellant also appears to have been diligent in asserting in the court below his right to secure the crop of oranges. He promptly resisted the application for an order restraining him from proceeding with the foreclosure, charging that the proceedings were "an attempt to evade the just terms of the obligations to affiant for the purpose of securing the benefit of the November harvest of oranges * * *" He asserted a probable deficiency under the foreclosure proceedings and moved for an order vacating the temporary stay and granting him permission to proceed with his foreclosure. Before any action had been taken by the referee upon his motion for leave to proceed with foreclosure, the appellee herein, who had then been appointed receiver by the bankruptcy court, obtained an order directed to the appellant requiring appellant to show cause why it should not be adjudged and decreed that appellant had no right in the growing crops. To this order the appellant filed objections and made a showing claiming the crops as part of the real property, they being unsevered and unharvested, claiming his security was insufficient without the crops, and asserting that the proposed order would give an unfair advantage to the unsecured creditors and deprive appellant of his security without just compensation.

It does not appear that appellant expressly asked for a sequestration of the proceeds of the sale of the crop, but the record shows that the crop had been harvested and sold by the trustee under an arrangement providing for an impounding of the net proceeds of sale awaiting determination of these proceedings.

The attempt of the referee to preserve the lien of the chattel mortgage for the benefit of the estate availed nothing, for while he had the right to make such an order under the provisions of section 60, sub. b, 11 U.S.C.A. § 96, sub. b, yet, under the rule of Penryn Co. v. Sherman-Worrell Fruit Co., supra, the lien of the crop mortgage was subordinate to the rights of the holder of the trust deed as against an unharvested crop.

The facts of this case are very similar to those in Mortgage Loan Co. v. Livingston, 8 Cir., 45 F.2d 28. In that case the controversy concerned the rents and issues of hotel property operated by a receiver in bankruptcy proceedings brought against the mortgagor of the hotel property. After default under the mortgage, the mortgagee initiated foreclosure by advertisement, and sale under power of sale was to have been held on June 29. A few days prior to that date, the petition in bankruptcy was filed and the court appointed a receiver and entered an order enjoining the foreclosure sale. The mortgagees asserted claim to the rents and issues collected by the receiver following the date when the mortgagees'

---

to make an appointment. It could not reasonably be expected to do more in the circumstances in respect to the sequestration of such issues and profits for application to its debt. In view of these facts, it would be inequitable to disregard the pledge by awarding the proceeds arising from the operation of the mortgaged premises to general creditors." Central States Life Ins. Co. v. Carlson, 10 Cir., 98 F.2d 102, 106.

sale was first advertised to be held. Subsequently the court granted leave to sell the property under the mortgage, and at the sale a deficiency was disclosed. The mortgage there described the real estate "together with all * * * rents, issues and profits thereto belonging," and provided that the trustee under the mortgage should be entitled to possession of the property directly or through a receiver in the event of default, and recited that he should have a right in that event to collect the revenue therefrom. When the foreclosure was restrained and the receiver appointed, counsel for the mortgagees by letter advised the bankruptcy receiver of their claim to the rents and profits and requested the receiver to segregate the revenues from the hotel and to apply them to the payment of existing defaults under the mortgage. The receiver agreed that the hotel revenues should be kept separately but the mortgagees' petition for an order directing the receiver to pay them the revenues collected from the hotel for application upon the deficiency under the foreclosure sale, which exceeded that amount, was denied by the court except to the extent of the taxes and insurance on the property, the court holding that the mortgagees were not entitled to the rents and profits in question.

Upon appeal the court held the mortgagees should have these rents. In an opinion the language of which we might well adopt here,[3] the court said, 45 F.2d at pages 32, 34: "We are of the view that the mortgagees in effect intervened in the receivership proceedings in aid of their proceedings to foreclose, and this intervention operated to charge all of the net income arising from the operation of the property

---

[3] "Had the receiver not taken the property, the foreclosure proceedings then pending would, in the regular course of procedure, have given the second mortgagees possession of it on the 29th of June, 1927. The rents and issues would, under the pledge provisions of this mortgage, have then gone to the mortgagees, and they might have applied them to the payment of the taxes and insurance. It constituted a part of the security for their claim. As the result of the receiver's conduct of this hotel property, he had cash on hand in an amount exceeding $27,000. * * *

"We are of the view that the cash in the receiver's hands constituted, within the meaning of this mortgage, rents and issues, and it remains to consider whether or not the mortgagees took proper steps to entitle them thereto. It is argued, and the lower court was of the view, that they were not entitled to these funds because they had never acquired actual possession of the property, either directly or through a receiver, and that they had not made demand therefor. In the absence of a receivership, or other process by which the mortgaged property is in the control of the court, a mortgagee of real property would not be entitled to the rents and profits of the mortgaged premises until he had taken actual possession, or until possession were taken in his behalf by a receiver, or until he had demanded such possession. (Citing cases) The appointment of the receiver was not opposed by the mortgagees, and they at once, through their attorney, notified the receiver of the conditions of their mortgage and their claim upon the rents and issues, and requested that the rents and issues from this particular property be separately accounted for. This the receiver agreed to do, and in fact, he did keep separate account thereof. The mortgagees from time to time asked the court for permission to foreclose, which carried with it a request for possession, and asked the court to direct the receiver to apply these rents and profits to payment of the taxes, insurance, and interest. In effect the mortgagees made themselves parties to the bankruptcy proceedings, recognized the receivership, but never acquiesced in an appropriation by him of the rents and issues of the property to the use and benefit of the general creditors, but promptly and persistently insisted that these rents and issues be impounded by the receiver, and either be used in the discharge of the taxes and insurance or be turned over to them. While it is true these mortgagees acquiesced in the collection of these rents and profits by the receiver, they did so on the understanding that they were impounded and would be properly applied or accounted for, and it cannot be said that they ever acquiesced in an appropriation of them by the receiver on behalf of the general creditors. * * * By carrying on the business of this hotel company through a receivership, the court assumed the burden of administering the property and collecting the income for the benefit of whomsoever was entitled thereto." 45 F. 2d at pages 31, 32.

by the receiver with the lien of their mortgage. * * *

"To hold that the mortgagees had a legal right to these rents and issues under the provisions of their mortgage, but that they should be precluded from recovering same because they had not technically pursued a legal remedy is to overlook the fact that the property was in the control of a court of equity, and that equitable remedies commensurate with the legal rights of the parties should be available. To take from the mortgagees the property to which confessedly they are entitled under the pledge provision of their mortgage, and transfer it to the unsecured creditors of the bankrupt, appeals to us as harsh, inequitable, and unwarranted."

In the case of In re Hotel St. James Co., 9 Cir., 65 F.2d 82, supra, this court held against the claim of the mortgagee for rents and profits of the mortgaged property collected by the receiver, on the ground that the trustee under the trust deed had taken no steps either before or after the bankruptcy to take possession of the property or to claim the rents and profits, until after the mortgaged real property had been sold. In distinguishing that case from Mortgage Loan Co. v. Livingston, supra, this court expressed approval of the doctrine of the Livingston case. In the later case of American Trust Co. v. England, 9 Cir., 84 F.2d 352, where the mortgagee had demanded that the trustee sequester the rents of the mortgaged real property and such sequestration had actually been made, this court expressly followed the decision in the Livingston case.

In the case of Investors Syndicate v. Smith, 9 Cir., 105 F.2d 611, this court modified the order of the' bankruptcy court holding that Metropolitan Life Insurance Co., mortgagee, had no right to the rents, issues or profits of certain mortgaged real property belonging to the debtors' estate, by holding that the mortgagee's petition for sequestration of such rents, issues and profits accomplished the same result as if it had recovered possession through an action for that purpose or to foreclose its mortgage, and directed that the net rentals in the hands of the trustee be retained and applied on the deficiency, if any, upon the sale of the property mortgaged to the insurance company.[4]

For the reasons we have given, we hold that the appellant here exercised as much diligence in the pursuit of his claim to the crop as he was required to do. We believe that for the reason set forth in the Livingston case, supra, and in the decisions of this court which have approved and followed it, the appellant is entitled to the proceeds of the orange crop, and therefore so much of the order of the lower court as denied them to him must be reversed.

It is so ordered.

[4] In accord with the decisions of this court above cited are the following: Central States Life Insurance Co. v. Carlson, 10 Cir., 98 F.2d 102; First Savings Bank & Trust Co. v. Stuppi, 8 Cir., 2 F.2d 822; In re Clark Realty Co., 7 Cir., 234 F. 576. The cases are collected in Collier on Bankruptcy, 14th Ed., Volume 4, pp. 1015–1026, and in note 75 A.L.R. 1526.

Most of the cases cited in this opinion had to do with rents or profits other than crops. The mortgages, as here, pledged the "rents, issues and profits" of the mortgaged property, and generally authorized the mortgagee to foreclose and to take possession upon default. Under the California decisions to the effect that unharvested crops are a part of the realty, Wilson v. White, 161 Cal. 453, 460, 119 P. 895, the same result would have followed in this case even if the trust deeds had made no mention of the rents, issues or profits.