In re OAK GLEN R–VEE, a Limited Partnership, Debtor.

SANTA FE FEDERAL SAVINGS & LOAN ASSOCIATION, a corporation, and Hemet Federal Savings & Loan Association, a corporation, Plaintiffs,

v.

OAK GLEN R–VEE, a Limited Partnership, Defendant.

Bankruptcy No. 80–01779–JD.
Adv. No. 80–1265.

United States Bankruptcy Court,
C. D. California.

Jan. 19, 1981.

Surr & Hellyer, San Bernardino, Cal., for plaintiffs.

Lawrence A. Diamant, Robinson, Wolas & Diamant, Los Angeles, Cal., for defendant.

## MEMORANDUM OF DECISION

JAMES R. DOOLEY, Bankruptcy Judge.

On March 5, 1980 the defendant debtor filed a petition under Chapter 11 of the

Bankruptcy Code. Prior to and during the Chapter 11 proceedings the debtor has operated a recreational vehicle park in this district. Plaintiffs are the holders of a note and a first deed of trust encumbering the real property and improvements on which the recreational vehicle park is operated. The note has been in default since July 1, 1979; and on June 11, 1980 plaintiffs filed this action to require the debtor to cease spending, to segregate, and to account for all rents, income, issues, and profits derived from their security from and after August 1, 1979. The contentions of the parties have raised the following controlling issues:

1. Did plaintiffs' deed of trust make an absolute assignment of the rents, income, issues, and profits, or were the rents, income, issues, and profits merely given as additional security?

2. May this court require the debtor to sequester and account for the rents, income, issues, and profits from and after August 1, 1979?

3. Should this court authorize the debtor to use the rents, income, issues, and profits from its operations pursuant to 11 U.S.C. § 363(c)(2)?

4. Are plaintiffs entitled to attorney's fees for this proceeding?

1. The last portion of the grant on page 2 reads:
"Trustor further irrevocably grants, transfers and assigns to Beneficiary the rents, income, issues and profits from all such property.
FOR THE PURPOSE OF SECURING:"

2. Paragraph (20) reads as follows:
"(20) *Right to Collect and Receive Rents and Profits.* Notwithstanding any other provisions hereof, Trustee and Beneficiary hereby grant permission to Trustor to collect and retain the rents, income, issues and profits from such property as they become due and payable but Beneficiary reserves the right to revoke such permission as to Trustee and itself at any time with or without cause by notice in writing to Trustor. In any event, such permission to Trustor automatically shall be revoked upon default by Trustor in payment of any indebtedness secured hereby or in the performance of any agreement hereunder. On any such default, Beneficiary may at any time without notice, either in person, by agent or by receiver to be appointed by the court, and without regard *to the adequacy of any security for the indebtedness hereby secured*, enter upon and take

## RENTS ETC. GIVEN AS ADDITIONAL SECURITY

■ While the question is not free from doubt, this court is of the view that the deed of trust involved in this case did not make an absolute assignment of the rents, income, issues, and profits, as was the case in *In re Ventura-Louise Properties*, 490 F.2d 1141 (9th Cir. 1974) and *Kinnison v. Guaranty Liquidating Corp.*, 18 Cal.2d 256, 115 P.2d 450 (1941). Rather, this court concludes for the reasons set forth below that the rents, income, issues, and profits were given as additional security as was the case in *Malsman v. Brandler*, 230 Cal.App.2d 922, 41 Cal.Rptr. 438 (1964).

After the grant on pages 1 and 2 of the deed of trust [1], the phrase "For the Purpose of Securing:" appears on page 2. Thereafter on page 2 are listed the payments or other performances which the deed of trust was given for the purpose of securing. Also, at the top of page 3 of the Deed of Trust appears the following clause: "To Protect the Security of this Deed of Trust, Trustor Agrees:". Thereafter appear twenty-eight numbered paragraphs; and paragraph (20) on page 6 is entitled *"Right to Collect and Receive Rents and Profits"* [2].

possession of such property, or any part thereof; in its own name sue for or otherwise collect the rents, income, issues and profits thereof, including those past due and unpaid; and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby and in such order as Beneficiary may determine. Any excess of Beneficiary's costs and expenses in operating such property and collecting rents therefrom over rentals collected therefrom during such period of operation (whether such operation be by Beneficiary itself or through such a court-appointed receiver) shall constitute, and be treated as, a secured advance made by Beneficiary to protect the security of this Deed of Trust. The entering upon and taking possession of such property, the collection of such rents, income, issues and profits, and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice."

While paragraph (20), if considered alone, might be construed as an absolute assignment of the rents, income, issues, and profits upon default; this paragraph should be construed in conjunction with the language at the top of page 3, which indicates that the agreement was made to protect the security, and the language on page 2, which indicates that the grant was given for the purpose of securing performance.

■ Under California law[3], where a beneficiary of a deed of trust only acquires a security interest in the rents, income, issues, and profits, he must, in order to obtain the rents, income, issues, and profits, actually acquire possession of the property by consent or lawful procedure or secure the appointment of a receiver, or take such other action as is deemed a substitute for possession. *In re Hotel St. James Company*, 65 F.2d 82, 84 (9th Cir. 1933). *Malsman v. Brandler, supra*, 230 Cal.App., at pages 923–924, 41 Cal.Rptr. 438; see also, *In re Ventura-Louise Properties, supra*, at page 1143; *Kinnison v. Guaranty Liquidating Corp., supra*, 18 Cal.2d at page 261, 115 P.2d at 450.

## POWER OF COURT TO ORDER SEQUESTRATION

■ Where bankruptcy proceedings are pending, efforts in the bankruptcy court by the holder of the trust deed or mortgage to have the rents sequestered have been held sufficient to enable the court to thereafter award the rents to the holder of the trust deed or mortgage. *Groves v. Fresno Guarantee Savings and Loan Assn.*, 373 F.2d 440, 442–443 (9th Cir. 1967); *Pollack v. Sampsell*, 174 F.2d 415, 418–419 (9th Cir. 1949); *American Trust Co. v. England*, 84 F.2d 352, 356 (9th Cir. 1936); 4A Collier on Bankruptcy, 14th Ed., ¶ 70.16, pages 161–162.1. As

the court in *Pollack v. Sampsell, supra*, declared (page 418):

"These courts are agreed, however, that where the holder of the trust deed or mortgage has either by appropriate steps taken prior to the bankruptcy, or by timely application to the bankruptcy court, actively undertaken to obtain the rents or profits of the real property for application upon the mortgage indebtedness, it is then the duty of the bankruptcy court to preserve the rents and profits for the holder of the trust deed or mortgage. These decisions may be justified upon the ground that in such cases the diligence of the mortgagee has demonstrated that he would probably have realized upon the rents or profits had bankruptcy not intervened."

Thus the filing of plaintiffs' complaint in this action on June 11, 1980 is sufficient to enable this court to order that the rents, income, issues, and profits of the debtor's operations from and after June 11, 1980 be turned over to or sequestered for the benefit of plaintiffs. However, rents, income, issues and profits prior to June 11, 1980 may not be turned over to or sequestered for plaintiffs.

## USE OF RENTS ETC. AUTHORIZED UNDER 11 U.S.C. § 363(c)(2)

■ Under 11 U.S.C. § 363(c)(2) the court, after notice and a hearing, may authorize the use of cash collateral. This court is of the view that rather than ordering the rents etc. sequestered for plaintiffs, the debtor should be authorized, *nunc pro tunc* as of June 11, 1980, to use the rents, income, issues, and profits from its operations for a reasonable period of time pursuant to 11 U.S.C. § 363(c)(2).[4] At trial the

---

**3.** In the absence of federal legislation, the right of a secured creditor to rents, income, issues, and profits from real property is determined by the law of the state where the property is located. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

**4.** Even if this court were not to authorize the debtor to use the rents, income, issues, and profits from its operations pursuant to 11 U.S.C. § 363(c)(2), plaintiffs would only be enti-

tled to the net rentals, income, issues, and profits. See *Fidelity Bankers Life Insurance Co. v. Williams*, 506 F.2d 1242, 1243 (4th Cir. 1974) where Fidelity petitioned the Bankruptcy Court for an accounting and payment of the "net rentals". Evidence adduced at trial established that from the commencement of this Chapter 11 proceeding through June 30, 1980 the debtor's operating expenses exceeded its gross income and that there were no net rentals, income, issues, or profits.

debt owed to plaintiffs, including attorneys fees, totaled approximately $525,000.00; while there was testimony at trial that the property given to secure the debt had a value of $1,700,000.00 while being operated, and a value of $1,300,000.00 without being operated. From the evidence adduced at trial the court finds and concludes that the property given to secure plaintiffs' debt has a reasonable market value of at least $1,000,000.00 and that there is a sufficient equity "cushion" in the property at this time to afford plaintiffs adequate protection. *In re Rogers Development Corp.*, 2 B.R. 679, 5 B.C.D. 1392 (Bkrtcy. E.D.Va. 1980, Blackwell N. Shelley, Bankruptcy Judge); 2 Collier on Bankruptcy, 15th Ed., ¶ 361.01, pages 361–9.

## ATTORNEYS' FEES

■ A secured creditor is entitled to reasonable attorney's fees if provided for in the security agreement, and the security is sufficient to pay for them. *In re Bain*, 527 F.2d 681 (6th Cir. 1975); *In re Neil Properties, Inc.*, 360 F.Supp. 914 (C.D.Calif.1966).

■ The deed of trust in this case contains several provisions which relate to the issue of attorney's fees. Page 2 of the deed of trust shows that the deed was given: "FOR THE PURPOSE OF SECURING:

\* \* \* \* \* \*

(2) Payment of such additional sums with interest thereon

\* \* \* \* \* \*

(b) as may be paid out or advanced by Beneficiary, or may otherwise be due to Trustee or Beneficiary, under any provision of this Deed of Trust and all modifications, extensions or renewals thereof or"

At the top of page 3 of the deed of trust appears the heading "To Protect The Security of this Deed of Trust, Trustor Agrees:". Paragraph (10) under this heading on page 5 provides as follows:

"(10) *Litigation.* To appear in and defend any action or proceeding purporting to affect the security hereof or such property, or the rights or powers of Beneficiary or Trustee, and, whether or not Trustor so appears or defends, to pay all costs and expenses of Beneficiary and Trustee including costs of evidence of title and attorney's fees in a reasonable sum, which shall not be less than $250.00, in any such action or proceeding in which Beneficiary or Trustee may appear by virtue of being made a party defendant or otherwise and irrespective of whether the interest of Beneficiary or Trustee in such property is directly questioned by such action, including but not limited to any action for the condemnation or partition of such property and any action brought by Beneficiary to foreclose this Deed of Trust or to enforce any of its terms and provisions."

Paragraph (14) under the aforementioned heading on page 6 provides in part:

"(14) *Defense of Deed of Trust.* Notwithstanding any other provisions hereof, Beneficiary or Trustee may,

(a) commence, appear in, or defend any action or proceeding purporting to affect the security hereof or such property, or the rights or powers of Beneficiary or Trustee,

\* \* \* \* \* \*

(c) in exercising any such power, pay necessary expenses, employ attorneys and pay their reasonable fees."

This court is of the view that the above-quoted provisions entitle plaintiffs to have the attorney's fees which they incurred in the prosecution of this action in the amount of $2,370.54 added to the amount of their secured debt.

This Memorandum of Decision contains findings of fact and conclusions of law as required by Bankruptcy Rule 752. The defendant is directed to prepare, serve, and lodge an appropriate judgment consistent with this Memorandum of Decision.