SALINE STATE BANK, Appellant,

v.

Richard MAHLOCH, Eunice Mahloch, Dennis Mahloch and First National Bank of Chicago, Illinois, Appellees.

No. 86–2458.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1987.

Decided Nov. 23, 1987.

Jerrold L. Strasheim, Omaha, Neb., for appellant.

Joseph M. Russell, Chicago, Ill., for appellees.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and LARSON,* Senior District Judge.

LAY, Chief Judge.

Saline State Bank entered into a mortgage agreement with the debtors, Richard, Dennis, and Eunice Mahloch, on January 12, 1982. After meeting their obligations under the mortgage agreement for eleven months, the Mahlochs filed a petition in bankruptcy under chapter 11 of the Bankruptcy Code on November 30, 1982. Even though the Mahlochs had declared bank-

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of    Minnesota, sitting by designation.

ruptcy, however, they continued to meet their obligations under the mortgage agreement with Saline State Bank ("Saline") for several months.

On September 28, 1983, Saline, as mortgagee, filed an application with the bankruptcy court to sequester rents and profits from the property. This claim to rents and profits was based on the language of the loan agreement, which expressly provided:

[U]pon such default the Mortgagee, or a receiver appointed by a court, may at its option and without regard to the adequacy of the security, enter upon and take possession of the Property and collect the rents, issues and profits therefrom and apply them first to the cost of collection and operation of the Property and then upon the indebtedness secured by this Mortgage; said rents, issues and profits being hereby assigned to the Mortgagee as further security for the payment of the indebtedness secured hereby.

On November 10, 1983, a hearing was held before bankruptcy Judge Crawford.[1] Judge Crawford ruled that Saline's interest would not be recognized in Nebraska, and that the automatic stay provision of 11 U.S.C. § 362(a) (1982) would prevent Saline from perfecting its interest after the Mahlochs filed in bankruptcy. Accordingly, the bankruptcy court denied Saline's applications to sequester rents and profits and

ruled in favor of the Mahlochs and the First National Bank of Chicago ("FNB"), an unsecured creditor.

On appeal to the district court, Judge Beam[2] reversed the bankruptcy court's decision and remanded for further proceedings to determine if the value of the property was insufficient to secure Saline's interest. Saline was opposed on remand, once again, by FNB and the Mahlochs. After considering additional documentary evidence and stipulations of fact, Bankruptcy Judge Mahoney[3] entered an order denying Saline's applications.[4]

On appeal to the district court for the second time, Judge Strom[5] affirmed the bankruptcy court's decision even though the Mahlochs did not enter an appearance. First National Bank of Chicago, representing the unsecured creditors, asserted that it could avoid the interest claimed by Saline because Nebraska law did not recognize interests in rents and profits as perfected until the mortgagee actively pursues its interest. In ruling in favor of FNB, Judge Strom relied on 11 U.S.C. § 544, which allows the trustee or debtor in possession to avoid perfection of liens arising subsequent to the filing of the bankruptcy petition.

On appeal from Judge Strom's ruling, Saline asserts that the district court committed reversible error in relying on section 544.[6] Saline also argues that the express

1. The Honorable David L. Crawford, United States Bankruptcy Judge, District of Nebraska.

2. The Honorable C. Arlen Beam, United States District Judge, District of Nebraska.

3. The Honorable Timothy Mahoney, United States Bankruptcy Judge, District of Nebraska.

4. Judge Beam based his reasoning on a finding that there had been a pre-petition default. On remand Judge Mahoney found that in fact there was no default until after the bankruptcy petition had been filed. There is no contention that Judge Mahoney was incorrect in this finding.

5. The Honorable Lyle E. Strom, United States District Judge, District of Nebraska.

6. Section 544 states in full:
    (a) The trustee shall have, as of the commencement of the case, and without regard to

any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
    (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;
    (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and
    (3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that

provision relating to rents and profits is a self-executing lien, effective henceforth at the time of the agreement. This latter argument, in effect, adopts the rationale that under Nebraska law, which both parties agree controls the question of the validity of the lien interest, no further act of perfection is necessary by Saline, and they are entitled to claim the rents and profits as cash collateral under 11 U.S.C. § 363(a).

According to FNB's argument under section 544, however, the security agreement affecting rents and profits is not a lien under Nebraska law until Saline perfects that interest in state court by appointing a receiver and foreclosing on the property. FNB argues that Saline could not do this until after the Mahlochs filed their bankruptcy petition because there was no default pre-petition. FNB also finds that the district court did not err in invoking section 544 which precludes Saline from perfecting its lien.

The overall effect of the district court's ruling, then, is that Saline has no further security interest in the rents and profits and the fund must be applied to satisfy the general creditors (one of whom would now be Saline). Alternatively, FNB asserts that if Saline is able to perfect its lien, it cannot do so retroactively and any enforcement of the lien must be as of September 28, 1983, when Saline moved in bankruptcy court to have the funds sequestered.

After *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the rights of a secured creditor must be determined according to the applicable non-bankruptcy law of the state wherein the debt arises. Once bankruptcy intervenes, the bankruptcy trustee can avoid only those security interests which could not have been perfected under state law. At least in the case of a pre-petition default, *Butner* states emphatically that: "the primary reason why any holder of a mortgage may fail to collect rent immediately after default

must stem from state law." 440 U.S. at 57, 99 S.Ct. at 919.

**The Pre–Petition Security Interest Under Nebraska Law**

Saline argues that its interest was perfected pre-petition, and, therefore, it is entitled to collect subsequent rents and profits. In support of its argument, Saline refers to established Nebraska law which recognizes the validity of assignment of rents clauses. *Central Sav. Bank v. First Cadco Corp.*, 186 Neb. 112, 114, 181 N.W.2d 261, 264 (1970); *Penn. Mut. Life Ins. Co. v. Katz*, 139 Neb. 501, 504, 297 N.W. 899, 901 (1941).

Notwithstanding Saline's persuasive argument, we find that Nebraska law requires us to hold that Saline did not have a lien until their interest was fully perfected, i.e., by filing a petition to sequester rents and profits. Neb.Rev.Stat. § 25–1081 (Reissue 1985) and Neb.Rev.Stat. § 25–1082 (foreclosure proceeding). Only by this method could the mortgagee exercise ownership over the rents and profits. *See Prudential Ins. Co. of Am. v. Farm Inv. Co.*, 123 Neb. 578, 586, 243 N.W. 842, 846 (1932); *Huston v. Canfield*, 57 Neb. 345, 348–49, 77 N.W. 763, 764 (1899). Furthermore, under the express terms of the mortgage agreement, this procedure to perfect the lien can be invoked only upon default of the mortgagor. Nebraska law makes clear that perfection of this type of interest may happen only when the mortgaged property is insufficient to discharge the mortgage debt. *Federal Farm Mortgage Corp. v. Ganser*, 146 Neb. 635, 639, 20 N.W.2d 689, 692 (1945); *Prudential Ins. Co. of Am. v. Farm Inv. Co.*, 123 Neb. at 586, 243 N.W. at 846; *Huston v. Canfield*, 57 Neb. at 348–49, 77 N.W. at 764; *Jacobs v. Gibson*, 9 Neb. 380, 387–88, 2 N.W. 893, 894 (1879). In the present case, it was stipulated that Saline was undersecured.

Saline argues that the agreement's assignment of rents clause creates a self-exe-

---

obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.
(b) The trustee may avoid any transfer of an interest of the debtor in property or any obli-

gation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

cuting lien and, therefore the appointment of a receiver is a mere procedural step. This position is contrary to established Nebraska law.[7] As stated by the Nebraska Supreme Court:

> The general rule is that a junior mortgagee who obtains a receiver of the rents and profits in aid of a bill to foreclose his mortgage is entitled to the rents and profits at the hands of such receiver up to the time of appointing a receiver upon a bill of a prior mortgagee not a party to the original suit. High on Receivers, § 688. And the prior mortgagee is only entitled to have of the receiver such rents and profits as accrue after the appointment in aid of such prior mortgage, although one and the same person is appointed in both cases. The rule is based upon the consideration that, until the elder mortgagee sees fit to assert his right to the rents and income, a junior encumbrancer has a right to do so; and the first mortgagee not being a party to the former suit and *having no lien on the rents and profits*, and no right to recover the back rents, he can only assert his right thereto as against the receiver from the date of the appointment in his own suit.

*Goddard v. Clarke*, 81 Neb. 373, 376, 116 N.W. 41, 42 (1908) (emphasis added).

Subsequent cases have enforced the same requirements. *See Penn. Mut. Life Ins. v. Katz*, 139 Neb. at 504, 297 N.W. at 901 (widow executed mortgage on property which, upon thirty days default, assigned to plaintiff. mortgagee the rents due and delivered to plaintiff a written assignment of the mortgaged property). In *Penn. Mut. Life Ins. v. Katz*, the court observed that:

> Defendant contends, relying upon *Huston v. Canfield*, 57 Neb. 345, 77 N.W. 763, that in a foreclosure action the court cannot divert the rents of the mortgaged premises from the tenant in possession claiming title under the mortgagor, except by the appointment of a receiver pursuant to statutory provisions. Of course, this contention is true unless the stipulation inter partes makes the rule otherwise.

Recently, the United States Bankruptcy Court for the District of Nebraska observed that, outside of the bankruptcy context, it remains the rule in Nebraska today that a receiver must be appointed:

> In Nebraska, the proper procedures to enforce such a lien outside the context of bankruptcy includes the commencement

---

7. There is no doubt that some states do adopt this rationale. See R. Broude, *Reorganizations Under Chapter 11 of The Bankruptcy Code*, § 5.01[3], at 11–12 (1986), and Comment, *The Mortgagee's Rights to Rents and Profits Following a Petition in Bankruptcy*, 60 Iowa L.Rev. 1388, 1390–91 (1975). In his treatise, Broude writes:

> It follows from *Butner* that, in those states in which affirmative action is required by a secured party to enforce the assignment of rents clause, the rents are not cash collateral until that action is taken. This is because the requirement of Section 363(a) that "an entity other than the estate" have an interest therein has not been satisfied. As one court has pointed out:
> "An examination of the legislative history reveals that Congress did not intend for the Code to preempt state law determinations of a mortgagee's interests in rents. This conclusion comports with 'the principle of bankruptcy jurisprudence' ... that federal law supercedes [sic] state law only to the extent necessary to further federal objectives'.... The policy considerations and federalism concerns that underpin the *Butner* decision are just as applicable to the new code as they were to the 1898 Act. As the Supreme Court has noted: 'Uniform treatment of property interests by both state and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy.'"
> When the secured creditor has undertaken affirmative action to protect its right to post-bankruptcy rents, or where it is found that under state law the assignment of rents clause is self-executing, the courts have tended to limit the use to which the rents might be put. For the most part, the debtor in possession or trustee is permitted to use the rents for purposes of maintaining the property, for making real estate tax payments and, if there is a surplus, to make mortgage amortization payments. These holdings comport with the requirement of adequate protection.
> *Reorganizations Under Chapter 11 of The Bankruptcy Code*, § 5.01[3], at 11–12 (quoting from *Matter of Village Properties, Ltd.*), 723 F.2d 441, 446 (5th Cir.), *cert. denied*, 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984)).

of foreclosure proceedings and requesting the appointment of a receiver to collect the rents and profits.

*In re Anderson,* 50 B.R. 728, 732 (D.Neb. 1985) (*citing Prudential Ins. Co. v. Farm Inv. Co.,* 123 Neb. 578, 243 N.W. 842 (1932) and *Huston v. Canfield,* 57 Neb. 345, 77 N.W. 763 (1899)).

■ An analysis of Nebraska cases to date clearly demonstrates that it is only upon default that the assignment clause of the security agreement becomes an equitable lien. Thereafter Nebraska law requires affirmative action on behalf of the lienholder to perfect such lien.

Saline argues that despite the Nebraska law discussed above, the express language of the assignment provision creates an immediate lien. *See Penn Life v. Katz,* 139 Neb. at 504, 297 N.W. at 901. We must disagree. The security agreement must be read as a whole and it is clear that each clause must be read as integrated with every other clause. There should be little doubt that the agreement provides a condition precedent of default to the establishment of an equitable lien. Nebraska law is uniform in requiring further perfection to protect the lien.[8]

### Avoidance Powers under Section 544

Having determined that Saline's lien had not been perfected, we turn to the district court's reasoning that FNB can avoid perfection of the lien under section 544. We find the district court erred in so ruling.

FNB asserted in the district court that Saline's interest was unperfected when the Mahlochs filed their petition in bankruptcy and, therefore, Saline's lien should have been avoided under 11 U.S.C. § 544. The express terms of section 544, however, are that: "The *trustee* shall have" the power to avoid liens unperfected at the time of the initiation of bankruptcy proceedings.[9] (Emphasis added).

Case law provides ample rationale as to why only the trustee or debtor in possession can invoke the avoidance powers under section 544: (1) general creditors otherwise would hinder plans to reorganize under chapter 11, *In re Smythe,* 28 B.R. 882, 885 (Bankr.D.Colo.), *aff'd,* 32 B.R. 736 (D.Colo. 1983); (2) one group of unsecured creditors might benefit to the detriment of other unsecured creditors as a result of piecemeal litigation, *In re Sweetwater,* 55 B.R. 724, 733 (D.Utah 1985); and (3) the various motions and cross claims that would inevitably ensue might create needless confusion and inconvenience for all involved. *In re Carbide Cutoff Inc.,* 703 F.2d 259, 264 (7th Cir.1983); *Gochenour v. Cleveland Terminals Bldg. Co.,* 118 F.2d 89, 95 (6th Cir.1941).

■ Despite the language of section 544, a few courts have allowed a creditors' committee to initiate adversary proceedings on their own. *In re Evergreen Valley Resort, Inc.,* 27 B.R. 75 (Bankr.D.Me.1983); *In re Joyanna Holitogs, Inc.,* 21 B.R. 323 (Bankr.S.D.N.Y.1982); *In re Monsour Medical Center,* 5 B.R. 715 (Bankr.W.D.Pa. 1980). FNB has cited no authority, however, to the effect that a single creditor has standing to invoke section 544. At least two courts have held otherwise. *See Boyd v. Martin Exploration Co.,* 56 B.R. 776, 781 (E.D.La.1986); *In re Smythe,* 28 B.R. at 885. *But cf. Dehmer v. Temple,* 44 B.R.

---

**8.** Bankruptcy Judge Mahoney recites strong reasons militating against Saline's construction:

> If that is the law, there is no incentive for a farmer to attempt to reorganize under Chapter 11 in the District of Nebraska because there will be no unencumbered assets to fund a plan. If that is the law, creditors who have loaned money to a farmer and taken a security interest in the growing crops, products and proceeds will be greatly surprised that the mortgage lender whose mortgage was not in default on the date the petition in bankruptcy was filed has a prior claim to the "rents and profits" which will leave the secured creditor under the Uniform Commercial Code with little or nothing. If that is the law, unsecured creditors' rights will be changed by a mortgage lender that has a hidden lien which can be perfected, to the detriment of unsecured creditors, postpetition.

*In re the Matter of Richard and Eunice Mahloch, Dennis Mahloch,* 62 B.R. 744 (Bankr.D.Neb. 1986).

**9.** The debtor in possession obtains these powers only when no trustee has been appointed. In those cases, in which no party has requested a trustee, the debtor in possession is invested with the powers of the trustee. 11 U.S.C. § 1107(a).

992, 995 (S.D.Miss.1984), *modified, Joe T. Dehmer Distributors, Inc. v. Temple,* 826 F.2d 1463 (5th Cir.1987) (creditors can set aside fraudulent conveyances). FNB did not have standing to initiate adversary proceedings. Furthermore, even if we were to find that FNB could initiate adversary proceedings, they did not do so. Since initiating adversary proceedings is a necessary precursor to bringing a section 544 avoidance action, we hold that section 544 was never properly invoked. *See* Advisory Committee Notes to Fed.R.Bankr. 7001, 11 U.S.C., and *In re Commercial W. Fin. Corp.,* 761 F.2d 1329, 1336 (9th Cir. 1985) ("[I]f the Trustee wants the benefit of avoiding valid security interests under the strongarm clause of the Bankruptcy Code, he must carry the burden of following the mandated procedures." 761 F.2d at 1338.)

We note that the district court's opinion states that the Mahlochs possessed the section 544(a) avoidance powers. The Mahlochs, however, have not attempted to exercise their powers. Only FNB has argued on behalf of the debtors, the estate, or the unsecured creditors. FNB had several options if they were dissatisfied with the performance of the Mahlochs:

> If a creditor is dissatisfied with lack of action on the part of the debtor-in-possession, the creditor may move to replace the debtor-in-possession with a Chapter 11 trustee; or to convert the Chapter 11 case to one under Chapter 7; move to dismiss the Chapter 11 case; or petition the court to compel the debtor-in-possession to act or to gain court permission to institute the action itself.

*In re Curry & Sorensen, Inc.,* 57 B.R. 824, 828 (Bankr.App. 9th Cir.1986). FNB failed to pursue any of the options suggested in *In re Curry & Sorenson, Inc.*

Furthermore, there is no merit to FNB's argument that Saline has waived its ability to challenge the district court's ruling under section 544(a). Saline is not attacking FNB's standing to sue. Instead, Saline argues that proper procedures were not followed by any party seeking to avoid Saline's lien on rents and profits.

We conclude that the district court committed an error of law by deciding this case on the basis of section 544 when it had not been properly invoked and, in fact, could not be asserted by FNB. Therefore, the judgment of the district court is reversed. We remand this matter to the district court for proceedings consistent with this opinion.

**The Petition to Sequester Rents and Profits**

Finding that section 544(a) was improperly invoked by the district court, we face the issue whether the bankruptcy court should allow Saline to proceed with its applications to sequester funds from the date of its application. The record is not clear as to whether any of the funds in dispute were earned by the estate after the date of Saline's application, September 28, 1983. Assuming there were funds earned after that date, the bankruptcy court should proceed with an evidentiary hearing under section 552(b) and determine the equities in allowing Saline to proceed.[10]

FNB urges that Saline cannot proceed with further perfection because of the existence of the automatic stay under section

---

**10.** Section 552 reads:

**Postpetition effect of security interest**

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 544, 545, 547, and 548 of this title, if the debtor and a secured party enter into a security agreement before the commencement of the case and if the security interest created

by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case *to the extent provided by such security agreement and by applicable non-bankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.*

11 U.S.C. § 552 (emphasis added).

362. We note exercise of section 552(b) is subject to section 362 as well as section 544. *In re Casbeer,* 793 F.2d 1436, 1442–43 (5th Cir.1986); *In re Engstrom,* 33 B.R. 369, 373 (Bankr.S.D.1983). However, since a trustee has not been appointed under section 544(b), and FNB has never moved for such appointment, we address whether Saline may sequester the rents and profits without moving the bankruptcy court to set aside the stay.

■ After the Mahlochs filed and the automatic stay went into effect, Saline did not make any efforts to perfect until September 28, 1983, when it filed petitions to sequester rents and profits. We must assume the amount that has accrued since Saline filed its petitions to sequester is a readily identifiable amount which the bankruptcy court can easily determine. Furthermore, since the Mahlochs have not been involved with the proceedings, and, in fact, the land has been sold, the money requested by Saline is not necessary to a successful reorganization under chapter 11. Here Saline does not seek to go into the state court, rather it simply requests the bankruptcy court to sequester the rents in the proceeding before it. Accordingly, we hold that the stay need not be formally lifted in order to award the rents and profits to Saline from the date after it filed petitions to sequester rents and profits. *See In re Village Properties, Ltd.,* 723 F.2d at 445–447 (while interest was not a lien until perfected, the court recognized that a petition to sequester rents and profits would perfect mortgagee's interest even if filed after the automatic stay was effective); *Consolidated Capital Income Trust v. Colter, Inc.,* 47 B.R. 1008 (D.Col.1985) (a judgment lien creditor can perfect its interest post-petition); *In re Oak Glen R–Vee,* 8 B.R. 213, 216 (Bankr.C.D.Cal.1981) (Benefi-

ciary of trust filed action to require debtor to cease spending and to account for "all rents, income, issues, and profits," 8 B.R. at 215, but in view of equity cushion, debtor was permitted to retain rents and profits for a reasonable time. Filing of complaint, however, was sufficient to enable court to grant request to sequester rents and profits); *contra In re Gotta,* 47 B.R. 198 (Bankr.W.D.Wis.1985) (since Wisconsin requires actual possession in order to perfect interest in rents and profits, and creditor could not obtain actual possession during pendency of stay, an interest in rents and profits cannot be perfected post-petition. 47 B.R. at 203. The *Gotta* court observed, however, that the result might be different in other jurisdictions where actual possession of property was not required to perfect an interest in rents and profits.) [11]

We therefore affirm the judgment of the district court that the Saline's lien was not valid prior to its motion to sequester rents and profits made September 28, 1983, in the bankrutpcy court; the district court erred in avoiding the perfection of the lien under section 544 and the court may allow sequestration of the rents and profits subsequent to September 28 as a secured interest in the name of the Saline State Bank.

Each party to pay its own costs.

---

**11.** We note that the instant case and *In re Oak Glen R–Vee,* 8 B.R. at 216, and *Consolidated Capital Income Trust v. Colter, Inc.,* 47 B.R. at 1011, are distinctly different from *United States of America v. Landmark Park & Assoc.,* and *In re Engstrom.* In the latter cases, the basis for permitting a secured creditor to perfect despite the automatic stay was federal law. In *Land-* *mark Park* and *Engstrom,* there were federal contracts and the party seeking to perfect was the United States government. Since it was a federal contract, the effect of a default was determined by federal law and not the law of the underlying state. The instant case, however, is determined under state law as is required by *Butner.*