**In re GRAHAM SQUARE, INC.**

**Bankruptcy No. 690–01182.**

United States Bankruptcy Court,
N.D. Ohio.

July 11, 1990.

**528**

John P. Van Abel, Amerman, Burt & Jones, Canton, Ohio, for debtor.

Stephen D. Thompson, Black, McCuskey, Souers & Arbaugh, Canton, Ohio, for Union Nat. Bank of Pittsburgh.

Russ Kendig, Krugliak, Wilkins, Griffiths & Dougherty, Canton, Ohio, for Central Trust Co. of Northeastern Ohio.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

The court is presented with a motion for use of cash collateral filed by the debtor and debtor in possession, Graham Square, Inc. The debtor seeks to use the rental income secured to The Union National Bank of Pittsburgh (UNB) and The Central Trust Company of Northeastern Ohio (Central Trust) to operate its business as it attempts to reorganize. Both UNB and Central Trust strenuously contest the use of the rental income. A hearing was held pursuant to Bankruptcy Rule 4001(b), upon the conclusion of which the court took the matter under advisement.

The court has jurisdiction in this matter by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(M). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FACTS

The debtor obtained a construction loan from UNB in May, 1988, to build and operate a strip style shopping center located on Graham Road in the city of Stow, Ohio. The original amount of the loan was $8,550,000. At present, approximately $8,056,000 plus interest is due and owing UNB. As security for the loan, UNB possesses, among other things, a mortgage on the premises and an assignment of the rental income.

In September, 1989, the debtor obtained an additional construction loan in the amount of $1,000,000 from Central Trust to construct several out-parcel buildings in front of the shopping center. Currently there is due Central Trust approximately $925,632 plus interest. Central Trust also possesses a mortgage on the real estate and an assignment of the rental income to secure the indebtedness.

The debtor filed for relief under Chapter 11 of the Title 11 of the United States Code on June 6, 1990. It was stipulated at the hearing on the motion for the use of cash collateral that the debtor was in default of its loan obligations to UNB and Central Trust prior to its filing bankruptcy.

At the hearing, the debtor presented income projections from rental income and common area maintenance fees for each of the months of July and August, 1990, of $68,826. This figure is based upon 89.8% occupancy of the shopping center. For these same months, the debtor estimates operating expenses of $11,649.72, leaving a balance of available cash each month of $57,176.28. The debtor has offered to pay this sum to UNB and Central Trust as adequate protection for the use of rent proceeds. The debt service to UNB and Central Trust at 11% interest, the original contract rate on each of the mortgages, is $82,332 per month. However, both loans provide that upon default the interest rate would increase to the prime rate plus 3%, or 14% interest.[1] At this level, the debt service is $99,587 per month.

The debtor in its projections estimates that by December, 1990, it will be receiving $98,059.85 in monthly rental income and common area maintenance fees. Deducting projected monthly operating expenses of $14,709.14, there will remain a balance of $83,350.71. This increase in rental income from July to December reflects an expected increased occupancy rate of from 89.9% to 100%. However, to obtain the 100% occupancy status, an additional $404,-

---

1. The court assumes, from the testimony and statements made at the hearing that the default provisions in Central Trust's loan documents are the same as those of the UNB loan. The court, however, was never presented with any loan documents regarding Central Trust's loan to Graham Square.

000 is needed to complete various portions of the project. The debtor anticipates obtaining an additional loan at 11.5% interest. Such an additional loan and the present obligations to UNB and Central Trust will create a monthly debt service load of approximately $86,202, assuming only an 11% interest rate.

Both UNB and Central Trust argue that the debtor's offer of adequate protection, the payment of the debt service, is inadequate as the monthly payment falls short of the amount due per month, even at the 11% rate. Further, even if the debtor can achieve 100% occupancy, there remains a negative net cash flow when interest is paid on the three (3) loans that will, in the debtor's view, be necessary to accomplish its goals.

## DISCUSSION

■ 11 U.S.C. § 363(c)(2) provides:

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

Section 363(e) further provides:

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

The threshold issue for the court to determine is whether the rental income that the debtor seeks to use is cash collateral within the meaning of Section 363(a).[2]

■ Whether or not a mortgagee is entitled to rents and profits derived from the mortgaged property must be determined with reference to applicable state law. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Saline State Bank v. Mahloch,* 834 F.2d 690 (8th Cir.1987); *In re Pfleiderer,* Memorandum of Decision, Case No. 686–00198 (Bankr.N. D.Ohio, October 16, 1987).

Ohio law has been summarized in 69 O.Jur.3d Mortgages, § 151 (1986):

A mortgage of real property does not per se operate as a specific pledge of the rents and profits therefrom. To have that effect the mortgage must expressly include them. But even though a mortgage contains a pledge of rents and profits, and even though the condition is broken, the mortgagor is entitled to them so long as he retains possession. *To be entitled to the rents and profits specifically pledged, the mortgagee must have taken possession of the premises, or must have taken some action, such as the appointment of a receiver, to reduce the rents and profits to possession.* (footnotes omitted) (emphasis added).

It appears to the court, from its review of the entire file, the papers relating to the motion for use of cash collateral and the statements made at the hearing, that neither UNB nor Central Trust took any affirmative steps prior to the debtor's bankruptcy filing to secure the rents in any fashion such as described above. Additionally, neither bank has filed any type of motion in this court to sequester the rents or a notice pursuant to Sections 546 or 552 of the Bankruptcy Code to exercise their rights to obtain possession of the rental income.

Accordingly, the court must find that the rents and common area maintenance fees do not presently qualify as "cash collateral." As a result, the requirement of Sec-

---

**2.** 11 U.S.C. § 363(a) provides:

In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

**530**

tion 363(e) that adequate protection be given by the debtor for the use of this rental income is not applicable. *See, In the Matter of Hamlin's Landing Joint Venture,* 77 B.R. 916 (Bkrtcy.M.D.Fla.1988); *Saline State Bank v. Mahloch, supra.*

Graham Square, Inc., is entitled, therefore, for the present time, to use the rents and common area maintenance fees in the ordinary course of its business, subject of course, to the rules of this court and the provisions of the Bankruptcy Code.

An order in accordance herewith shall issue.